UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ALASKA AIRLINES, INC.,

        Plaintiff,

v.

ENDURANCE AMERICAN INSURANCE CO.,

        Defendant.

No.:  2:20-cv-1444

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT

## I.   PARTIES

1.1     Alaska Airlines, Inc. ("Alaska Airlines") is an airline incorporated under the laws of the state of Alaska, with its principal place of business at 19300 International Blvd., SeaTac, WA 98188-5304, United States of America.

1.2     Endurance American Insurance Co. ("Endurance") is an insurance company incorporated under the laws of the state of Delaware, with its principal place of business at 4 Manhattanville Road, 3rd Floor, Purchase, NY 10577, United States of America.   Endurance issued a liability insurance policy, Policy No. NAF6007990, Policy Period 4/1/17–4/1/18 ("Endurance Policy"), to named insured Huntleigh USA Corporation ("Huntleigh").   The Endurance Policy contains an additional-insured endorsement, Endorsement #13 (NAX-99-1215),

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 1

under which Alaska Airlines qualifies as an additional insured and for which Alaska Airlines is entitled to all rights and benefits provided under the Endurance Policy.  Attached as Exhibit A, and incorporated by reference as though fully stated herein, is the Endurance Policy.

## II.    SUBJECT MATTER JURISDICTION

2.1    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

2.2    Alaska Airlines is incorporated under the laws of the state of Alaska, with its principal place of business in the state of Washington.  Accordingly, for jurisdictional purposes, Alaska Airlines is a citizen of Alaska and Washington.

2.3    Endurance is incorporated under the laws of the state of Delaware, with its principal place of business in New York.  Accordingly, for jurisdictional purposes, Endurance is a citizen of Delaware and New York.

## III.    PERSONAL JURISDICTION

3.1    This court has specific personal jurisdiction over Endurance under Washington's Long Arm Statute, RCW 4.28.185, because Endurance transacted business in Washington; committed a tortious act in Washington; contracted to insure Alaska Airlines, as an additional insured—which is a company principally located in Washington; contracted to defend and indemnify Alaska Airlines, as an additional insured, with respect to a third-party personal injury action filed in Washington, by the estate of a deceased Washington resident ("Kekona Lawsuit"). The instant cause of action arises out of Endurance's contacts with Washington.

3.2    This court also has specific personal jurisdiction over Endurance under the Due Process Clause because (1) Endurance purposefully availed itself of the privilege of conducting

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 2

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

activities in Washington and purposefully directed its tortious activities at Washington; (2) Alaska Airlines' claims arise out of Endurance's Washington contacts; and (3) Endurance cannot present a compelling case that the exercise of specific personal jurisdiction over it in Washington would be unreasonable as a matter of due process.

3.3     Endurance purposefully availed itself to specific personal jurisdiction in Washington because Endurance deliberately defined the "coverage territory" in the Endurance Policy to include the state of Washington.  The Endurance Policy defines its "coverage territory" as "The United States of America (including its territories and possessions), Puerto Rico and Canada." Ex. A (Endurance Policy) at KW 291.  Purposeful availment of a forum occurs when an insurer agrees to provide liability coverage within the forum, including through a nationwide coverage territory, and an insured event results in a third-party personal injury lawsuit against an insured or additional insured in that forum.

3.4     Endurance's purposeful availment in Washington is further demonstrated because the Endurance Policy contains no forum selection clause that might limit the jurisdictions in which Endurance is subject to suit in an action seeking rights and benefits under the Endurance Policy. *See* Ex. A (Endurance Policy) at KW 289.

3.5     Endurance's purposeful availment in Washington is further demonstrated because Endurance chose to include a broad additional-insured endorsement in the Endurance Policy, which reads: "With respect to operations performed by [Huntleigh] on behalf of any person or organization to whom [Huntleigh] has provided a service," Endurance agreed to "[i]nclude that person or organization as an Additional Insured under Liability Coverages."  Ex. A (Endurance Policy) at KW 310.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 3

3.6     Based on each of these factors, individually and in combination, Endurance purposefully availed itself and is subject to specific personal jurisdiction in Washington because Endurance made the choice to: (1) include a nationwide coverage territory in the Endurance Policy, requiring Endurance to defend and indemnify its insureds/additional insureds against third-party personal injury actions in venues nationwide, including in Washington; (2) include a broad additional-insured endorsement that (i) did not require identification of the entities entitled to additional-insured coverage; or (ii) limit coverage based on where such additionally-insured entities are principally located or incorporated—*i.e.*, locations where such additionally-insured entities might be sued based on the exercise of general personal jurisdiction; (3) forgo inclusion of any forum selection clause for actions by named or additional insureds against Endurance; and (4) Endurance presumably charged premiums and incurred profits from the Endurance Policy commensurate with the scope of coverage provided under the Endurance Policy.

3.7     In addition to purposeful availment, this court has specific personal jurisdiction over Endurance because Endurance purposefully directed its tortious conduct at Washington, with certain tortious conduct by Endurance actually occurring in Washington, and the effect of Endurance's tortious conduct was foreseeably felt in Washington by its insured, a company principally located in Washington.  Endurance's forum-related, bad faith conduct of denying Alaska Airlines' repeated tenders for defense and indemnity of the Kekona Lawsuit is more fully described below and is incorporated by reference as though fully stated herein.

3.8     The instant action arises from Endurance's bad faith failure to defend and indemnify Alaska Airlines in the Kekona Lawsuit filed and pending in King County, Washington. The Kekona Lawsuit was brought by the estate of a deceased Washington resident, in relation to a flight itinerary that departed from, and was destined to return to, Washington, and was brought

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 4

against a Washington-based additional insured, in the Superior Court of the State of Washington in and for King County.  Therefore, Endurance's bad faith conduct of wrongfully denying Alaska Airlines' repeated tenders for defense and indemnity of the Kekona Lawsuit was purposefully directed at, and felt in, Washington.   Further, some of Endurance's bad faith conduct was conducted by Endurance's agent while physically present in Washington.

## IV.    VENUE

4.1       Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 because a substantial portion of the events, acts, and omissions giving rise to this action occurred in the Western District of Washington.

## V.    FACTS

**A.    Service Agreement Between Alaska Airlines and Huntleigh**

5.1       In 2007, Alaska Airlines and Huntleigh entered into a service agreement ("Alaska/Huntleigh Agreement"), under which Huntleigh agreed to furnish wheelchair-assistance services to Alaska Airlines' passengers "on inbound or departure flights" at the Portland International Airport ("PDX").

5.2       The Alaska/Huntleigh Agreement contains an indemnification provision, which requires Huntleigh to defend, indemnify, and hold harmless Alaska Airlines against any claims that arise out of or result from any acts or omissions by Huntleigh in the performance or nonperformance of the Alaska/Huntleigh Agreement.   In addition, the Alaska/Huntleigh Agreement required Huntleigh to procure liability insurance covering its operations.

**B.    Kekona Claim and Tenders to Huntleigh and Endurance for Defense and Indemnity**

5.1       On July 5, 2017, counsel from the Spokane, Washington law firm Randall Danskin ("Kekona's Counsel") sent a letter of representation, on behalf of Bernice Kekona, to Alaska

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 5

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Airlines' Risk Management Department in SeaTac, Washington. Kekona's Counsel indicated that Ms. Kekona had been injured on June 7, 2017 at the Portland International Airport ("PDX").

5.2     Ms. Kekona, who resided in Spokane, had been flying with Alaska Airlines on a return trip from Maui to Spokane, with a short layover in Portland, Oregon.

5.3     Kekona's Counsel alleged that Ms. Kekona had not been provided requested wheelchair-escort service at PDX, and that Ms. Kekona sustained injuries as a result when she drove her electric wheelchair onto an escalator at the airport ("Kekona Claim").

5.4     Alaska Airlines provided notice of the Kekona Claim to USAIG, which represents the insurers of Alaska Airlines. Thereafter, USAIG collected information about the Kekona Claim from Alaska Airlines and Kekona's Counsel.

5.5     By letter dated August 18, 2017, on behalf of Alaska Airlines, USAIG tendered the Kekona Claim for defense and indemnification to Huntleigh, requesting that Huntleigh tender the claim to its liability insurers. Attached as Exhibit B, and incorporated by reference, is the August 18, 2017 Tender Letter (enclosures omitted).

5.6     On August 22, 2017, an attorney from the law firm Kern Wooley, P.C. responded to USAIG's August 18, 2017 Tender Letter, stating that Kern Wooley had been retained by Huntleigh and its insurer to administer the Kekona Claim. Kern Wooley stated that it had received USAIG's tender and that it intended to investigate the Kekona Claim. Thereafter, Kekona's Counsel began to communicate and exchange information directly with USAIG and Kern Wooley. USAIG and Kern Wooley also continued to communicate and exchange information.

5.7     On August 25, 2017, Kekona's Counsel sent a Demand Letter, on behalf of Bernice Kekona, to USAIG and Kern Wooley, attaching a draft complaint ("Kekona Draft Complaint"). The Kekona Draft Complaint alleged that on June 7, 2017, Bernice Kekona was a ticketed

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 6

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

passenger on Alaska Flight 862, which departed from Maui, Hawaii at 11:50 a.m. and arrived in Portland, Oregon at 8:13 p.m., with a final destination of Spokane, Washington.  Kekona Draft Compl., at ¶¶ 16, 20, 39, 47.  Ms. Kekona allegedly had requested "mobility/wheelchair" assistance for the flight, layovers, and gate-to-gate connections.  *Id*. at ¶ 20.  Ms. Kekona alleged that Alaska Airlines employees met her on the aircraft at PDX with an aisle wheelchair, transferred her to the aisle-wheelchair, and wheeled her off the aircraft and into the jet bridge.  *Id*. at ¶¶ 38–39.  Although the Kekona Draft Complaint refers to the wheelchair agents as Alaska Airlines employees, it is undisputed that the wheelchair agents who assisted Ms. Kekona were employed by Huntleigh.

5.8     The Kekona Draft Complaint alleges, once in the jet bridge, the wheelchair agents transferred Ms. Kekona to her dry cell electric wheelchair, which she had been traveling with as checked baggage.  *Id*. at ¶¶ 38–41.  According to Ms. Kekona, once she was belted to her electric wheelchair, the wheelchair agents "pointed the way out of the sky bridge/air bridge, but did not provide her gate-to-gate assistance as required."  *Id*. at ¶ 44.  The Kekona Draft Complaint alleges that, "[w]ithout the gate-to-gate escort, [Ms. Kekona] was confused and began following the crowd through the Portland International Airport . . . ."  *Id*.  It further alleges, "[a]t approximately 9:02 p.m., while traveling through the Portland International Airport attempting to locate her gate and return flight, [Ms. Kekona] sustained serious, permanent and life changing injuries when her wheelchair went down an escalator . . . ."  *Id*. at ¶ 45.  Attached as Exhibit C, and incorporated by reference, is the August 25, 2017 Demand Letter (enclosures other than Draft Complaint omitted) and Draft Complaint.

5.9     By letter dated September 13, 2017, Kern Wooley denied Alaska Airlines' tender for defense and indemnity on behalf of Huntleigh and its insurer, Endurance.  The September 13 Tender Denial Letter stated that Huntleigh and Endurance "do not have any information that

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 7

1   supports that [Kekona's] claim arises out of 'any act(s) or omission(s)' by Huntleigh 'in the

2   performance or nonperformance of services' under the Agreement."  Attached as Exhibit D, and

3   incorporated by reference, is the September 13, 2017 Tender Denial Letter.

4   5.10    Although the September 13 Tender Denial Letter from Kern Wooley purported to

5   deny Alaska Airlines' tender for defense and indemnity on behalf of Endurance (in addition to

6   Huntleigh), the Kern Wooley letter did not provide any supporting information or explanation

7   based on the terms of any policy of insurance issued by Endurance.

8   5.11    For example, but without limitation, the September 13 Tender Denial Letter (1) did

9   not identify the Endurance Policy number, policy type, or policy year; (2) did not state whether

10  Huntleigh was insured for liability in the applicable year with any other insurers; (3) did not state

11  whether the policy was subject to any self-insured retention; (4) did not state whether Alaska

12  Airlines was specifically named as additional insured or qualified/failed to qualify as an additional

13  insured by virtue of a blanket endorsement; (5) did not quote or cite any provisions of the purported

14  Endurance Policy; (6) did not explain how the allegations of the Kekona Draft Complaint fell

15  outside the scope of the Endurance Policy's insuring clause or fell within any policy exclusion; (7)

16  did not cite any laws in support of the denial; and (8) did not provide a copy of the policy to allow

17  Alaska Airlines to independently evaluate its entitlement to coverage as an additional insured

18  (Alaska Airlines did not possess the Endurance Policy and was not aware of Endurance's

19  relationship to Huntleigh prior to receiving the Kern Wooley correspondence).

20  **C.    Alaska Airlines' Renewed Tender and Kekona Mediation**

21  5.12    On September 20, 2017, Ms. Kekona died.  The Estate of Bernice Kekona alleges

22  that Ms. Kekona's death was proximately caused by complications from injuries she sustained in

23  the fall at PDX.

24  COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
    VIOLATION OF THE WASHINGTON INSURANCE FAIR
25  CONDUCT ACT AND CONSUMER PROTECTION ACT - 8

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

26

5.13      By letter dated October 16, 2017, Alaska Airlines' Counsel sent a letter to Kern Wooley, demanding that Huntleigh and Endurance promptly reverse their decisions denying Alaska Airlines' prior tender and accept Alaska Airlines' renewed tender of defense and indemnity, tendering to Huntleigh under the Alaska/Huntleigh Agreement and separately tendering to Endurance under the Endurance Policy (which Alaska Airlines did not yet possess). The October 16 Tender Letter pointed out that the Kekona Draft Complaint is entirely based on Ms. Kekona's allegations that the involved wheelchair agents, Huntleigh employees, allegedly failed to provide her with assistance.  Thus, the allegations clearly arise from Huntleigh's acts or omissions in the performance or nonperformance of its services under the Alaska/Huntleigh Agreement.

5.14      The October 16 Tender Letter also noted that Huntleigh's certificate of liability insurance, for which Alaska Airlines was identified as the Certificate Holder, indicates that Huntleigh was insured by Everest Indemnity Ins. Co. ("Everest") under Commercial General Liability Policy No. 51GL008051-171, effective from April 1, 2017 to April 1, 2018, and by The Hartford under Umbrella Liability Policy No. BE060702936, also effective from April 1, 2017 to April 1, 2018.  In light of this, Alaska Airlines' Counsel demanded clarification from Kern Wooley, which was purporting to act on Endurance's behalf, as to why Kern Wooley's September 13 Tender Denial Letter denied Alaska Airlines' tender on behalf of Huntleigh and Endurance, without mention of Everest or The Hartford.

5.15      The October 16 Tender Letter from Alaska Airlines' Counsel to Kern Wooley asked additional questions of Endurance and requested immediate production of the applicable Endurance Policy to allow Alaska Airlines to independently evaluate the validity of Endurance's denial of defense and indemnity under the putative Endurance Policy:

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 9

Is Endurance affiliated with Everest and/or the Hartford in some way with respect to the aforementioned policy/policies?  Was Huntleigh insured under a separate policy insured by Endurance for purposes of this incident?  Or, was the reference to Endurance simply an error?  Please let us know the answers to these questions immediately, as well as provide us with a copy of Huntleigh's applicable liability policy for this loss, whether it be insured by Endurance or otherwise.  Again, it is our position that Huntleigh and its insurer are obligated by contract and by law to accept Alaska's tender in this matter and also that it is Huntleigh's legal responsibility to notify its appropriate insurer of Alaska's tender.  The renewed tender and demand for defense and indemnification on behalf of Alaska in this letter is intended to be effective with respect to Huntleigh and its applicable liability insurer, whether that insurer be Endurance or otherwise.  In line with this, please forward this letter to Huntleigh's appropriate insurer immediately.

5.16     The October 16 Tender Letter closed with a repeated demand to Endurance to provide a copy of the applicable Endurance Policy: "Alaska and USAIG request that Huntleigh and its insurers promptly accept Alaska's tender of defense, and we ask that you please provide a copy of the applicable liability policy with Endurance or other applicable insurer."  Attached as Exhibit E (enclosures omitted), and incorporated by reference, is the October 16, 2017 Renewed Tender Letter.

5.17     On December 15, 2017, Alaska Airlines and Huntleigh mediated with the Kekona Estate in Spokane.  An attorney from Kern Wooley, which at all times has represented itself as acting as on behalf of Endurance, was physically present in Spokane for the mediation.

5.18     In the days leading up to the mediation in Spokane, Counsel for Alaska Airlines had multiple telephone communications with counsel at Kern Wooley, and in these communications, Counsel for Alaska Airlines repeatedly urged counsel at Kern Wooley to substantively respond Alaska Airlines' October 16 Tender Letter.  Counsel from Kern Wooley refused to do so.

5.19     At the time of the mediation, neither Huntleigh nor Endurance had substantively responded to Alaska Airlines' October 16 Tender Letter, and Endurance further failed to provide

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT - 10

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

the subject Endurance Policy or explain Endurance's relationship to Huntleigh in response to the questions posed by Alaska Airlines in its October 16 Tender Letter. Endurance's conduct appeared to be a deliberate attempt to prevent Alaska Airlines from obtaining information, including obtaining possession of the subject Endurance Policy, to obstruct Alaska Airlines from seeking remediation of its rights as an additional insured under the Endurance Policy. The unresolved issues of Alaska Airlines' renewed tenders to Huntleigh and Endurance created an insurmountable impediment to potential resolution of the Kekona Claim at mediation.

**D.      Kekona Lawsuit and Alaska Airlines' Third Tender to Endurance**

5.20      On December 27, 2017, the Estate of Bernice Kekona filed a Complaint for Survival Action and Wrongful Death ("Kekona Complaint") in King County Superior Court for the state of Washington. Attached as Exhibit F, and incorporated, by reference is the Kekona Complaint.

5.21      The Kekona Complaint alleges, "Defendant Huntleigh was acting as the agent of Defendant Alaska Airlines who retained the right to control the manner and means by which Defendant Huntleigh performed services, and pursuant to an express agreement, Defendant Huntleigh regularly provides wheelchair gate-to-gate escorts for passengers on Alaska Airlines' flights, including escorts for seniors and elderly passengers and those with disabilities, such as Bernice, a vulnerable adult passenger." Ex. G (Kekona Compl. at ¶ 129).

5.22      The Kekona Complaint alleges, on June 7, 2017, Huntleigh's employees "abandoned" Ms. Kekona and did not escort her to the gate for her connecting flight to Spokane, and that Ms. Kekona was "forced to find her own gate without the required escort." *Id.* (Kekona Compl. at ¶¶ 55, 57). The Complaint alleges, "[i]t was the duty and responsibility of Defendant Huntleigh, as Defendant Alaska Airlines' agent, to provide [] gate-to-gate escort service to

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 11

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Bernice[,]" and "[u]pon Bernice's arrival, Defendant Huntleigh breached its duty by failing to provide Bernice the required gate-to-gate escort[,] and "Bernice sustained fatal injuries as a direct and proximate result of Defendant Huntleigh's acts and omissions." *Id.* (Kekona Compl. at ¶¶ 134–37). The Kekona Complaint also alleges causes of action against Huntleigh for allegedly failing to adequately train and supervise its own employees. *Id.* (Kekona Compl. at ¶¶ 140–44). The Complaint alleges, "Defendants Alaska Airlines and Huntleigh were acting in concert and therefore are jointly and severally liable to Plaintiff under R.C.W. § 4.22.070(1)." *Id.* (Kekona Compl. at ¶ 127).

5.23     By letter dated August 21, 2018, Alaska Airlines submitted a third tender for defense and indemnity to Huntleigh and Endurance. The August 21 Tender Letter stated that, at a minimum, the Kekona Complaint triggered Huntleigh's defense obligations. Attached as Exhibit G (duplicative enclosures omitted), and incorporated by reference, is the August 21, 2018 Renewed Tender Letter.

5.24     By letter dated October 18, 2018, Kern Wooley, acting on behalf of Huntleigh "and its insurer," again, denied Alaska Airlines' tender for defense and indemnity. The October 18 Tender Denial Letter claimed that the Kekona Lawsuit "did not arise out of the performance or nonperformance of Huntleigh under the Agreement." Although Kern Wooley held out as acting on behalf of Huntleigh "and its insurer"—vis-à-vis Alaska Airlines' separate and independent tenders to both entities—the October 18 Tender Denial Letter did not provide any information or explanation in support of the tender denial based on the terms of the Endurance Policy.

5.25     Moreover, like Endurance's prior tender denial letter, the October 18 Tender Denial Letter did not provide Alaska Airlines with a copy of the Endurance Policy despite two demands to do so in Alaska Airlines' prior tender correspondence. In this regard, Endurance, acting through

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT - 12

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

its agent, continued what appeared to be a deliberate objective to wrongfully prevent and obstruct Alaska Airlines' ability to independently evaluate its entitlement to coverage under the Endurance Policy.

5.26     Endurance compounded its wrongful, bad faith conduct by failing to cite, reference, quote, or excerpt any provisions of the Endurance Policy in its tender denial letters.  Similarly, Endurance failed to cite, reference, quote, or excerpt any laws in support of its tender denials. Endurance failed to explain why it believed the allegations of the Kekona Complaint allegedly fell outside the scope of coverage provided by the Endurance Policy, fell within the scope of an exclusion in the Endurance Policy, or whether Endurance took the position that Alaska Airlines did not qualify as an additional insured under the Endurance Policy.  In other words, Endurance denied Alaska Airlines' tender of the Kekona Complaint without asserting any defenses under the Endurance Policy.  Attached as Exhibit H, and incorporated by reference, is the October 18, 2018 Tender Denial Letter.

**E.      Alaska Airlines Obtains the Endurance Policy Through Compulsory Process**

5.27     In accordance with an arbitration provision in the Alaska/Huntleigh Agreement, on June 28, 2019, Alaska Airlines commenced a AAA arbitration against Huntleigh, asserting claims against Huntleigh for its wrongful failure to defend and indemnify Alaska Airlines in the Kekona Lawsuit, in breach of the Alaska/Huntleigh Agreement.

5.28     On December 23, 2019, as part of discovery in the arbitration, Alaska Airlines requested that Huntleigh produce the subject Endurance Policy.  As described above, Endurance wrongfully denied Alaska Airlines' repeated requests for a copy of the Endurance Policy in the parties' tender correspondence.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 13

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1      5.29       On January 22, 2020, Huntleigh produced the Endurance Policy to Alaska Airlines.

2  Based on this production, Alaska Airlines had access, for the first time, to the Endurance Policy

3  and determined that it is, and had been, entitled to defense and indemnity of the Kekona Lawsuit

4  as an additional insured under the Endurance Policy.

5      5.30       Notably, in all of Endurance's tender correspondence, Endurance never identified

6  the Endurance Policy and never cited to any provision of the Endurance Policy as grounds for its

7  denial of Alaska Airlines' tenders.  Endurance never cited, quoted, or referenced the existence of

8  the additional-insured endorsement in the Endurance Policy.

9      5.31       The Endurance Policy contains the following provisions, in relevant part:

**ENDURANCE COMMERCIAL GENERAL LIABILITY**
**AVIATION INSURANCE POLICY**

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement.**

(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies resulting from your aviation operations. We will have the right and duty to defend any suit seeking those damages. . . .

Ex. A (Endurance Policy) at KW 279.

The Policy includes the following endorsement with respect to additional insureds:

**POLICY CHANGE**

In consideration of the premium paid and notwithstanding anything in the policy to the contrary, this endorsement amends the policy as shown below:

IT IS HEREBY UNDERSTOOD AND AGREED THAT:

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 14

With respect to operations performed by the Named Insured on behalf of any person or organization to whom the Named Insured has provided a service the company agrees to:

(a) Include that person or organization as an Additional Insured under Liability Coverages

All other terms and conditions of the policy remain unchanged.

*Id.* at KW 310.

5.32    Under the Alaska/Huntleigh Agreement, dated effective November 14, 2007, Huntleigh agreed to provide wheelchair-escort services on behalf of Alaska Airlines and its passengers.  The Alaska/Huntleigh Agreement required Huntleigh "to furnish Wheelchair services, as that term is generally understood in the air transportation industry, sufficient to service [Alaska's] passengers at the Airport. [Huntleigh] wheelchair escort personnel will be responsible for assisting wheelchair passengers on inbound and departure flights."  The Agreement "shall continue indefinitely," unless otherwise terminated by either party.   In this case, the Alaska/Huntleigh Agreement remained in effect as of June 7, 2017, the date of the underlying incident giving rise to the Kekona Lawsuit.

5.33    The allegations of the Kekona Draft and As-Filed Complaints squarely fall within the scope of additional-insured coverage to which Alaska Airlines is entitled under the Endurance Policy.

**F.    Fourth Tender to Endurance**

5.34    On February 19, 2020, Alaska Airlines issued a fourth tender to Endurance.  Now in possession of the Endurance Policy, Alaska Airlines was able, for the first time, to cite specific provisions of the Endurance Policy as a basis for coverage owed to it as an additional insured.  The fourth tender to Endurance provided a copy of the Kekona Complaint and the Alaska/Huntleigh

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT - 15

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Agreement, in addition to a detailed explanation of why Alaska Airlines is entitled to coverage under the Endurance Policy as an additional insured vis-à-vis the Kekona Lawsuit.  Attached as Exhibit I (enclosures omitted), and incorporated by reference, is the February 19, 2020 Tender Letter.

5.35　　　On April 13, 2020, Endurance responded to Alaska Airlines' February 19 Tender Letter.  Although Endurance's prior tender denials letters were sent on the letterhead of its agents at Kern Wooley, the April 13 Tender Denial Letter was sent on letterhead of Sompo International Insurance ("Sompo") which, according to the letter, administers claims for Endurance.  Notably, the April 13 Tender Denial Letter by Sompo on behalf of Endurance was signed by the same person who signed the tender denial letters by Kern Wooley on behalf of Endurance.  The April 13 Tender Denial states, "[t]his matter was previously administered by Kern Wooley, P.C., on behalf of Sompo."

5.36　　　Endurance's April 13 Tender Denial Letter denied Alaska Airlines' fourth tender for defense and indemnity of the Kekona Lawsuit.  Endurance's analysis of Alaska Airlines' entitlement to coverage as an additional insured under the Endurance Policy is as follows:

> As you have noted, this claim and lawsuit have been tendered previously to Huntleigh and its insurer by Alaska as respects a Services Agreement between Huntleigh and Alaska and as respects Alaska's purported status as an additional insured on Huntleigh's policy.  Sompo has responded previously to Alaska by letters dated September 13, 2017 and October 18, 2018.

> Sompo hereby again rejects Alaska's tender for all the reasons previously set forth. As you have noted, Endorsement #13 to the Endurance Policy only provides additional insured status to Alaska under its liability coverages with respect to operations performed by Huntleigh on behalf of Alaska. At the time of Mrs. Kekona's injury, it has always been undisputed that Huntleigh was not engaged by Alaska to perform wheelchair services operations on behalf of Alaska Airlines for her benefit.

> Should you have any questions, kindly advise.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 16

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Attached as Exhibit J, and incorporated by reference, is the April 13, 2020 Tender Denial Letter.

5.37     In its April 13, 2020 Tender Denial Letter, Endurance acknowledges, for the first time, the existence of the additional-insured endorsement in the Endurance Policy, but Endurance misrepresents the scope of coverage provided by the additional-insured endorsement, ignores the applicable legal standards to trigger an insurer's distinct duties of defense and indemnity, and Endurance wholly disregards the allegations of the Kekona Complaint and misrepresents, in clear contravention of the allegations of the Kekona Complaint, that "it has always been undisputed that Huntleigh was not engaged by Alaska to perform wheelchair services operations on behalf of Alaska Airlines for [Ms. Kekona's] benefit."

5.38     In denying Alaska Airlines' four tenders for defense and indemnity, Endurance did not agree to defend Alaska Airlines under a reservation of rights, and Endurance has not filed an action for declaratory relief to obtain a judicial order that it owes Alaska Airlines no duties under the Endurance Policy with respect to Kekona Lawsuit.

5.39     Because of Endurance's wrongful conduct, as described above, Alaska Airlines has incurred direct and consequential damages, of an ongoing nature, in an amount to be proven, but exceeding $75,000, exclusive of claimed interest, fees, and costs.

**G.     Status of Kekona Lawsuit**

5.40     On January 15, 2020, King County Superior Court Chief Judge James Rogers granted a request to continue the trial in the Kekona Lawsuit to April 13, 2020 due to witness-scheduling difficulties that arose because of administrative delays in jury selection.  Because of COVID-19, the trial date was continued twice more, with the trial presently scheduled for February 8, 2021.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 17

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1

**H.**    **Arbitration Ruling Against Huntleigh**

2

5.41    Pursuant to the Alaska/Huntleigh Agreement's dispute resolution clause, the

3

dispute as to whether Huntleigh owed a contractual duty to defend and indemnify Alaska Airlines,

4

irrespective of insurance coverage, was submitted to binding arbitration.  On April 30, 2020, the

5

arbitrator with the American Arbitration Association ruled, as a matter of law, that the allegations

6

of the Kekona Complaints fell within Huntleigh's scope of services under the Alaska/Huntleigh

7

Agreement and triggered Huntleigh's contractual duty to defend Alaska Airlines from the Kekona

8

Lawsuit.  The arbitrator further ruled, as a matter of law, that Huntleigh breached its contractual

9

duty to defend Alaska Airlines in the Kekona Lawsuit..

10

**I.**    **Insurance Fair Conduct Act Notice**

11

5.42    On August 31, 2020, Alaska Airlines served the written notice required by RCW

12

48.30.015(8)(b) by U.S.P.S. Certified Return Receipt to Endurance and the Office of the

13

Washington Insurance Commissioner.

14

**VI.    CLAIMS FOR DECLARATORY RELIEF
AND SPECIFIC PERFORMANCE**

15

16

6.1    Alaska Airlines incorporates and realleges the preceding paragraphs, as though

fully stated herein.

17

18

6.2    In accordance with 28 U.S.C. § 2201, an actual case or controversy, within the

19

subject matter jurisdiction of this court, exists between Alaska Airlines and Endurance for which

20

Alaska Airlines seeks a declaration of the parties' respective rights and other legal relations,

21

whether or not further relief is or could be sought.

22

23

24

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 18

25

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

26

6.3     Pursuant to the terms and conditions of the Endurance Policy, applicable Washington law, and the allegations of the Draft and As-Filed Kekona Complaints, Endurance is obligated to defend and indemnify Alaska Airlines in the Kekona Lawsuit.

6.4     Alaska Airlines timely tendered the Kekona Claim, Draft Kekona Complaint, and As-Filed Kekona Complaint to Endurance for defense and indemnity under the Endurance Policy, and Alaska Airlines fulfilled all conditions precedent to Endurance's required performance under the Endurance Policy.

6.5     Endurance wrongfully and in bad faith denied Alaska Airlines multiple tenders for defense and indemnity.

6.6     A justiciable controversy exists between Alaska Airlines and Endurance regarding their respective rights and obligations under the Endurance Policy vis-à-vis the Kekona Lawsuit.

6.7     Alaska Airlines seeks declaratory judgment and an order of specific performance that, under the Endurance Policy, Endurance must fully pay all past and future attorneys' fees, expenses, and costs incurred defending Alaska Airlines in the Kekona Lawsuit.

6.8     Alaska Airlines also seeks declaratory judgment and an order of specific performance that, under the Endurance Policy, Endurance must indemnify and pay any settlement or judgment entered against Alaska Airlines in the Kekona Lawsuit.

6.9     Endurance's obligation to defend and indemnify Alaska Airlines under the Endurance Policy may be resolved without adjudication of legal or factual matters that are in dispute in the underlying Kekona Lawsuit.  Alternatively, to the extent resolution of Endurance's obligations to Alaska Airlines requires adjudication of legal or factual matters that are in dispute in the underlying Kekona Lawsuit, the determination of those issues should be stayed pending

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 19

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

final resolution, including exhaustion of appeals, of the Kekona Lawsuit, to avoid prejudicing Alaska Airlines in the Kekona Lawsuit.

## VII.    CLAIMS FOR DAMAGES

### A.    Breach of Contract and Bad Faith Under Washington Law

7.1    Alaska Airlines incorporates and realleges the preceding paragraphs, as though fully stated herein.

7.2    Alaska Airlines qualifies as an additional insured under the Endurance Policy.

7.3    Alaska Airlines timely tendered the Kekona Claim, Draft Kekona Complaint, and As-Filed Kekona Complaint to Endurance for defense and indemnity under the Endurance Policy, and Alaska Airlines fulfilled all conditions precedent to Endurance's required performance under the Endurance Policy.

7.4    Under applicable Washington law, Endurance owed and continues to owe Alaska Airlines a duty of good faith and fair dealing.

7.5    Endurance wrongfully and in bad faith denied Alaska Airlines' repeated tenders for defense and indemnity of the Kekona Lawsuit.  Endurance's bad faith acts and omissions include, but are not limited to:

7.5.1    Engaging in a deliberate course of action to block, obstruct, and obfuscate Alaska Airlines' ability to independently evaluate its rights under the Endurance Policy by refusing to provide Alaska Airlines with a copy of the Endurance Policy and refusing to respond to Alaska Airlines' requests to explain the nature and scope of coverage provided by Endurance with respect to the Kekona Lawsuit;

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT - 20

7.5.2     Failing to timely respond to Alaska Airlines' tenders and failing to respond to Alaska Airlines' requests for information, including during the time leading up to, and at the time of, mediation with the Kekona Estate in Spokane;

7.5.3     Failing to cite, reference, quote, or excerpt any provisions of the Endurance Policy in support of Endurance's tender denial letters;

7.5.4     Failing to cite, reference, quote, or excerpt any laws in support of Endurance's tender denial letters;

7.5.5     Failing to consider and explain why the allegations of the Kekona Complaints allegedly fell outside the scope of coverage provided by the Endurance Policy, allegedly fell within the scope of an exclusion in the Endurance Policy, or whether Endurance's position was that Alaska Airlines did not qualify as an additional insured under the Endurance Policy;

7.5.6     Misrepresenting the scope of coverage provided by the additional-insured endorsement in the Endurance Policy;

7.5.7     Ignoring the applicable legal standards as to the trigger an insurer's distinct duties of defense and indemnity;

7.5.8     Wholly disregarding the allegations of the Kekona Complaint and misrepresenting, in clear contravention of the allegations of the Kekona Complaint, that certain facts purportedly were undisputed; and

7.5.9     Failing to defend Alaska Airlines under a reservation of rights and seek declaratory judgment that Endurance owes Alaska Airlines no duties under the Endurance Policy with respect to Kekona Lawsuit.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 21

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

7.6     At all relevant times, Endurance failed to deal fairly with Alaska Airlines, its additional insured, and failed to give equal consideration in all matters to Alaska Airlines' interests.  Endurance acted solely to protect and advance its own interests, at the expense of Alaska Airlines.  Despite its clear obligations, Endurance acted unreasonably, frivolously, and without support or justification in denying Alaska Airlines' timely tenders.

7.7     Endurance's acts and omissions constitute material breach of contract and insurance bad faith.

7.8     Because of Endurance's material breach of contract and insurance bad faith, Alaska Airlines has incurred direct and consequential damages, of an ongoing nature, in an amount to be proven but exceeding $75,000, exclusive of claimed interest, arbitration fees and costs.

7.9     Because of Endurance's material breach of contract and insurance bad faith, Alaska Airlines is entitled to attorneys' fees, expenses, and costs incurred in obtaining the full benefit of the Endurance Policy under *Olympic Steamship*.

**B.**    **Violation of Washington Insurance Fair Conduct Act**

7.10     Alaska Airlines incorporates and realleges the preceding paragraphs, as though fully stated herein.

7.11     Endurance's acts and omissions, described herein, contravene the public interest as defined by the Washington Insurance Code, RCW 48.01.030, constitute unfair claims-settlement practices as defined in RCW Ch. 48.30 and WAC Ch. 284-30, and violate the Washington Consumer Protection Act.

7.12     Endurance's acts and omissions in violation of the Washington Insurance Fair Conduct Act have caused Alaska Airlines to suffer damages, the amount of which will be proven but exceeding $75,000, exclusive of claimed interest, arbitration fees and costs.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND VIOLATION OF THE WASHINGTON INSURANCE FAIR CONDUCT ACT AND CONSUMER PROTECTION ACT - 22

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

7.13     Endurance's acts and omissions in violation of the Washington Insurance Fair Conduct Act entitle Alaska Airlines to treble damages, attorneys' fees, expenses, and costs.

7.14     In accordance with RCW 48.30.015(8)(b), 20 days have passed since Alaska Airlines provided written notice to Endurance and the Office of the Washington Insurance Commissioner of this Insurance Fair Conduct Act claim.

**C.     Violation of Washington Consumer Protection Act**

7.15     Alaska Airlines incorporates and realleges the preceding paragraphs, as though fully stated herein.

7.16     Endurances acts and omissions, as described herein, were deceptive and have the capacity to deceive a substantial portion of the public.

7.17     Endurance's acts and omissions were committed in the course of Endurance's business, and upon information and belief, as part of a generalized pattern of conduct with the potential for repetition.

7.18     Endurance's acts and omissions constitute unfair and deceptive acts and practices and unfair business practices, in violation of RCW 19.86 *et seq.*, including conduct constituting per se violations of the Washington Consumer Protection Act.

7.19     Endurance's acts and omissions have caused Alaska Airlines to suffer damages, the amount of which will be proven but exceeding $75,000, exclusive of claimed interest, arbitration fees and costs.

7.20     Endurance's acts and omissions in violation of the Washington Consumer Protection Act entitle Alaska Airlines to treble damages, attorneys' fees, expenses, and costs.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 23

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

**PRAYER FOR RELIEF**

Alaska Airlines seeks declaratory judgment, an order of specific performance, and judgment awarding money damages as follows:

1.      Declaratory judgment and an order of specific performance that Endurance must defend and pay all past and future attorneys' fees, expenses, and costs incurred defending Alaska Airlines in the Kekona Lawsuit under the Endurance Policy;

2.      Declaratory judgment and an order of specific performance that if a settlement or judgment against Alaska Airlines is entered in the Kekona Lawsuit, Endurance must pay such settlement of judgment under the Endurance Policy;

3.      Money damages in an amount to be proven, but exceeding $75,000, exclusive of claimed interest, attorneys' fees, expenses, and costs, due to Endurance's material breach of contract under the Endurance Policy;

4.      Money damages in an amount to be proven, but exceeding $75,000, exclusive of claimed interest, attorneys' fees, expenses, and costs, due to Endurance's bad faith acts and omissions;

5.      Money damages in an amount to be proven, but exceeding $75,000, exclusive of claimed interest, attorneys' fees, expenses, and costs, due to Endurance's violation of the Washington Insurance Fair Conduct Act and Consumer Protection Act;

6.      Treble damages pursuant to the Washington Insurance Fair Conduct Act and Consumer Protection Act;

7.      Attorneys' fees, expenses, and costs, as allowed by the Washington Insurance Fair Conduct Act, Consumer Protection Act, *Olympic Steamship*, and as otherwise permitted by law or equity;

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 24

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

8.    The maximum amount of pre and post judgment interest as allowed by law; and

9.    For such other relief as the court deems appropriate.

DATED:  September 29, 2020.

STOKES LAWRENCE, P.S.


By: */s/Caryn Geraghty Jorgensen*
    Caryn Geraghty Jorgensen (WSBA #27514)

By: */s/John T. Fetters*
    John T. Fetters (WSBA #40800)

By: */s/Brett T. MacIntyre*
    Brett T. MacIntyre (WSBA #46572)

Stokes Lawrence, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101-2393
Telephone: 206-626-6000
Fax: 206-464-1496
E-mail: caryn.jorgensen@stokeslaw.com
john.fetters@stokeslaw.com
brett.macintyre@stokeslaw.com

Attorneys for Plaintiff Alaska Airlines, Inc.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND
VIOLATION OF THE WASHINGTON INSURANCE FAIR
CONDUCT ACT AND CONSUMER PROTECTION ACT - 25

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000