UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALASKA AIRLINES, INC.,

            Plaintiff,

   v.

ENDURANCE AMERICAN
INSURANCE CO.,

            Defendant.

C20-1444 TSZ

ORDER

ENDURANCE AMERICAN
INSURANCE CO.,

            Counterclaimant
            and Third-Party
            Plaintiff,

   v.

ALASKA AIRLINES, INC.,

            Counter
            Defendant,

        and

UNITED STATES AIRCRAFT
INSURANCE GROUP; UNITED
STATES AVIATION
UNDERWRITERS, INC.; and
UNITED STATES AIRCRAFT
INSURANCE GROUP-RELATED
DOE ENTITIES 1 THROUGH 10,

            Third-Party
            Defendants.

THIS MATTER comes before the Court on the Motion for Partial Summary Judgment ("MPSJ"), docket no. 27, filed by Plaintiff Alaska Airlines, Inc. ("Alaska Airlines"), the Motion to Dismiss, docket no. 29, filed by Third-Party Defendants United States Aircraft Insurance Group and United States Aviation Underwriters, Inc. (collectively "USAIG"), and the Cross-Motion for Partial Summary Judgment ("CMPSJ"), docket no. 30, filed by Defendant Endurance American Insurance Co. ("Endurance").  Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

## Background

In November 2007, a Service Agreement between Alaska Airlines and Huntleigh USA Corporation ("Huntleigh") took effect in which Huntleigh agreed to provide wheelchair escort services to Alaska Airlines passengers at the Portland International Airport ("PDX").  Service Agreement, Ex. 1 to Newsom Decl. (docket no. 31-1 at 1). The Service Agreement included an indemnification provision:

> To the fullest extent permitted by law, Contractor shall indemnify, defend and hold harmless Alaska Airlines, its directors, officers, employees and agents from and against any and all claims, damages, losses, fines, civil penalties, liabilities, judgments, costs and expenses of any kind or nature whatsoever, including, but not limited to, interest, court costs and attorney's fees, which in any way arise out of or result from any act(s) or omission(s) by Contractor (or anyone directly or indirectly employed by Contractor or anyone for whose acts Contractor may be liable) in the performance or nonperformance of services under this Agreement, including but not limited

> ➢ Death of or injury to any person or persons;

> . . .

> However, nothing contained in this section shall be construed as an indemnity by Contractor against any loss, liability or claim caused solely by the acts or omissions of Company, its directors, officers, employees and agents, unless caused by the negligence or misconduct of Contractor, its directors, officers, employees or agents.

Id. at 3.  The Service Agreement further stated that it was to be governed by and construed in accordance with Oregon law.  Id. at 4.

On June 7, 2017, Bernice Kekona, who required wheelchair assistance, flew on an Alaska Airlines flight from Maui, Hawaii to Portland, Oregon.  Kekona Compl. Ex. A to Fetters Decl. (docket no. 28 at ¶¶ 32 & 48).  Kekona alleged that although she was supposed to receive gate-to-gate escort services at PDX, Huntleigh employees only assisted her to outside the airplane door.  Id. at ¶¶ 47, 53, & 55.  While Kekona attempted to find the gate for her connecting flight on her own, she fell down an escalator in her wheelchair and sustained several injuries, including lacerations to her right leg that later went septic.  Id. at ¶¶ 60, 78, & 106.  As a result, her right leg was amputated.  Id. at ¶ 109.  On September 20, 2017, Kekona died from complications following the amputation surgery.  Id. at ¶ 111.

Kekona's estate filed a survival and wrongful death action against Alaska Airlines and Huntleigh[1] in King County Superior Court in December 2017 ("Kekona Lawsuit").  See Kekona Lawsuit Compl., Ex. A to Fetters Decl. (docket no. 28).  By letter dated August 21, 2018, Alaska Airlines, for the third time, tendered the Kekona Lawsuit to

---

[1] Huntleigh was later dismissed from the action for lack of personal jurisdiction.  Order Granting Huntleigh's Motion to Dismiss (docket no. 28), Estate of Bernice Kekona v. Alaska Airlines, Inc. et al., Case No. 2:18-cv-00116-JCC (W.D. Wash.).

Huntleigh and Endurance, Huntleigh's insurer, for handling, defense, and

indemnification.  August 2018 Tender Letter, Ex. B to Fetters Decl. (docket no. 28 at 28–

31).  The letter asserted that Oregon law applied.  Id. at 29.

Huntleigh denied Alaska Airlines' tender on October 18, 2018.  October 2018

Tender Response Letter, Ex. C to Fetters Decl. (docket no. 28 at 42–43).  Huntleigh

denied tender purportedly because "the accident, which is the subject of the Kekona

Lawsuit, did not arise out of the performance or nonperformance of Huntleigh under the

Agreement."  Id.

Pursuant to the arbitration clause in the Service Agreement, Alaska Airlines

demanded arbitration of Huntleigh's duty to defend and indemnify Alaska Airlines in the

Kekona Lawsuit on July 19, 2019.  Demand for Arbitration, Ex. 2 to Newsom Decl.

(docket no. 31-2); Fetters Decl. at ¶ 5.  As part of the arbitration process, Huntleigh

produced to Alaska Airlines a liability insurance policy issued by Endurance ("Endurance

Policy").  Fetters Decl. at ¶ 6.  The Endurance Policy provides coverage for bodily injury

as follows:

**SECTION I – COVERAGES**

**COVERAGE  A  BODILY  INJURY  AND  PROPERTY  DAMAGE
LIABILITY**

1.      **Insuring Agreement.**

(a)     We will pay those sums that the insured becomes legally
obligated to pay as damages because of **bodily injury** or
**property damage** to which this insurance applies resulting
from your **aviation operations**.  We will have the right and
duty to defend any **suit** seeking those damages.  We may at our

1

2

> discretion investigate any **occurrence** and settle any claim or **suit** that may result.

Endurance Policy, Ex. D to Fetters Decl. (docket no. 28 at 59) (emphasis in original).

The Endurance Policy defined "aviation operations" as "all operations arising from the

ownership, maintenance or use of locations for aviation activities" including "all

operations necessary or incidental to aviation activities." Id. at 71.  The Endurance

Policy further provided additional insured coverage under Endorsement 13:

> In consideration of the premium paid and notwithstanding anything in the policy to the contrary, this endorsement amends the policy as shown below:
>
> IT IS HEREBY UNDERSTOOD AND AGREED THAT:
>
> With respect to operations performed by the Named Insured on behalf of any person or organization to whom the Named Insured has provided a service the company agrees to:
>
> Include that person or organization as an Additional Insured under Liability Coverages

Id. at 90.  The Endurance Policy expressly applied "[s]eparately to each insured against

whom claim is made or **suit** is brought."  Id. at 70 (emphasis in original).  After receiving

the Endurance Policy, Alaska Airlines once again tendered the Kekona Lawsuit to

Endurance, which Endurance ultimately denied.  Tender Letters, Exs. E & F to Fetters

Decl. (docket no. 28).

In April 2020, based on the parties' written submissions, the Seattle-based

arbitrator, applied Oregon law and ruled that, as a matter of law, Huntleigh had materially

breached its contractual duties to defend Alaska Airlines with respect to the Kekona

Lawsuit.  Ex. 4 to Newsom Decl. (docket no. 31-4 at 11–12).

ORDER - 5

1    In September 2020, Alaska Airlines filed this action against Endurance alleging

2    breach of contract, bad faith, and violations of Washington's Insurance Fair Conduct Act

3    ("IFCA") and Consumer Protection Act ("CPA").  Compl. (docket no. 1 at 20–23).  In

4    March 2021, Endurance filed its Answer and a Third-Party Complaint asserting a claim

5    for declaratory judgment and claims against USAIG for equitable contribution, statutory

6    contribution, and subrogation.  Answer (docket no. 11 at 21 & 35–40).

7    Alaska Airlines has now filed a Motion for Partial Summary Judgment on the

8    issue of whether Endurance breached its duty to defend.  Alaska Airlines MPSJ (docket

9    no. 27).  Endurance filed a Cross-Motion for Summary Judgment and a Response,

10   arguing that Alaska Airlines' Motion is moot and that Oregon law applies to Alaska

11   Airlines' claim for breach of contract, as well as its non-contract claims.  Endurance

12   CMPSJ (docket no. 30).  USAIG also filed a Motion to Dismiss Endurance's third-party

13   claims against it for lack of supplemental jurisdiction and failure to state a claim.  Motion

14   to Dismiss (docket no. 29).

15   **<u>Discussion</u>**

16        1.    **Cross-Motions for Partial Summary Judgment**

17        The Court shall grant summary judgment if no genuine issue of material fact exists

18   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

19   The moving party bears the initial burden of demonstrating the absence of a genuine issue

20   of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if

21   it might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty</u>

22   <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

23

1   adverse party must present affirmative evidence, which "is to be believed" and from

2   which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the

3   record, however, taken as a whole, could not lead a rational trier of fact to find for the

4   non-moving party, summary judgment is warranted.  See Beard v. Banks, 548 U.S. 521,

5   529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for

6   discovery and upon motion, against a party who fails to make a showing sufficient to

7   establish the existence of an element essential to that party's case, and on which that

8   party will bear the burden of proof at trial.'" (quoting Celotex, 477 U.S. at 322)).

9           **a.**    **Duty to Defend**

10        Alaska Airlines contends that "[t]he Kekona Complaint is replete with allegations

11   that squarely and unambiguously triggered Endurance's duty to defend Alaska Airlines as

12   an additional insured under the Endurance Policy."  MPSJ at 9.  Endurance "does not

13   contest its obligation to defend Alaska Airlines" and, as such, responds that Alaska

14   Airlines' Motion is "effectively moot."  CMPSJ at 2 & 10.

15        Under Article III of the United States Constitution, courts have the authority to

16   adjudicate "Cases" and "Controversies."  Already, LLC v. Nike, Inc., 568 U.S. 85, 90

17   (2013).  Our Supreme Court has repeatedly held that an actual controversy must exist

18   through all stages of the litigation, not only at the time the complaint is filed.  Id.  "A case

19   becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article

20   III—'when the issues presented are no longer live or the parties lack a legally cognizable

21   interest in the outcome.'"  Id. (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

22

23

1    Endurance argues that whether it breached a duty to defend Alaska Airlines in the

2    Kekona Lawsuit is moot because the arbitrator previously ruled that Huntleigh breached

3    its duty to defend Alaska Airlines; and Endurance, under the terms of the Endurance

4    Policy, is obligated to indemnify Huntleigh for its liability to Alaska Airlines.  But, as

5    Alaska Airlines notes, under the Endurance Policy, Endurance owed separate duties to

6    Alaska Airlines and Huntleigh, and it owed both a duty to indemnify *and to defend* both

7    insureds.  See Endurance Policy (docket no. 28 at 70) (containing a "Separation of

8    Insureds Clause" providing that the policy applies "[s]eparately to each insured against

9    whom claim is made or **suit** is brought) (emphasis in original); see also id. at 84.

10   Because Endurance owed separate duties to defend and indemnify both Huntleigh and

11   Alaska Airlines, the issue of whether Endurance breached its duty to defend Alaska

12   Airlines is not rendered moot by the arbitrators' conclusions.  The issue of whether

13   Endurance breached its duty to defend Alaska Airlines is also relevant to Alaska Airlines'

14   bad faith claim.

15       Endurance states that it "does not contest its obligation to defend Alaska Airlines,"

16   CMPSJ at 2, and, aside from asserting that the issue is moot, Endurance does not brief

17   whether it breached any duty to defend Alaska Airlines.  Under Washington law,[2] the

18

19   _____

[2] The parties dispute whether Oregon or Washington law applies to the issue of Endurance's duty to

20   defend Alaska Airlines, as the Endurance Policy does not contain any choice of law provision.
     Washington courts engage in a conflict of laws analysis only when there is an actual conflict between the

21   laws or interests of Washington and those of another state.  Seizer v. Sessions, 132 Wn.2d 642, 648, 940
     P.2d 261 (1997).  No actual conflict exists because under both Oregon and Washington law, the duty to

22   defend arises if the insurance policy conceivably covers the allegations within the four corners of the
     complaint.  See Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803, 329 P.3d 59 (2014); West Hills
     Dev. Co. v. Charis Claims Inc., 385 P.3d 1053 (Or. 2016).  Although Endurance points out that Oregon

23

ORDER - 8

1    duty to defend arises if the insurance policy conceivably covers the allegations within the

2    four corners of the complaint.  See Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793,

3    803, 329 P.3d 59 (2014).  Here, the Endurance Policy provided coverage for bodily injury

4    resulting from aviation operations and included Alaska Airlines as an additional insured

5    with respect to operations Huntleigh performed on behalf of Alaska Airlines.  Endurance

6    Policy (docket no. 28 at 59 & 90).  The complaint in the Kekona Lawsuit alleged that, as

7    Alaska Airlines' agent, Huntleigh had the duty to provide Kekona with gate-to-gate

8    escort service, Huntleigh breached its duty by failing to provide such service, and that

9    Kekona sustained fatal injures as a result of Huntleigh's acts and omissions.  Kekona

10   Lawsuit Compl. (docket no. 28 at ¶¶ 134, 135, & 137).  As the complaint in the Kekona

11   Lawsuit alleges bodily injury caused by operations Huntleigh performed (or failed to

12   perform) on behalf of Alaska Airlines, Endurance's duty to defend Alaska Airlines was

13   triggered.

14           The Court concludes that the Endurance Policy expressly provides that Endurance

15   owes a separate duty to defend Alaska Airlines and that the allegations in the complaint

16   in the Kekona Lawsuit triggered Endurance's duty to defend Alaska Airlines.  The Court

17   therefore GRANTS Alaska Airlines' Motion for Partial Summary Judgment, docket no.

18

19

20   _____

21   and Washington law differ on how courts may consider extrinsic evidence in relation to the duty to
     defend, neither party argues that the Court must consider extrinsic evidence to decide whether Endurance

22   owes a duty to defend in this case.  Accordingly, no conflict exists and Washington law applies to this
     issue.

23

ORDER - 9

1  27, and concludes that Endurance breached a duty to defend Alaska Airlines in the

2  Kekona Lawsuit.

3                  **b.**       **Choice of Law**

4        In its Cross-Motion for Partial Summary Judgment, Endurance argues that Oregon

5  law applies to Alaska Airlines' non-contract claims.  Alaska Airlines asserts that

6  Washington law applies.

7        Federal courts sitting in diversity apply the forum state's choice of law rules to

8  determine the controlling substantive law, and the Court applies Washington's choice of

9  law rules.  See Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005).

10  "Washington law presumptively applies."  Newmont USA Ltd. v. Am. Home Assurance

11  Co., 676 F. Supp. 2d 1146, 1156 (E.D. Wash. 2009).

12        "When parties dispute choice of law, there must be an actual conflict between the

13  laws or interests of Washington and the laws or interests of another state before

14  Washington courts will engage in a conflict of laws analysis."  Seizer, 940 P.2d at 264.

15  An actual conflict exists "[w]hen the result of the issues is different under the law of the

16  two states."  Id.  Here, the parties agree, and the Court concurs, that an actual conflict

17  exists between Oregon and Washington law with respect to Alaska Airlines' claims for

18  coverage by estoppel and under the IFCA and the CPA, because Oregon law does not

19  provide for analogous relief.  See CMPSJ at 13–15; Resp. to CMPSJ (docket no. 38 at 9–

20  10); see also Polygon Nw. Co. v. Nat'l Fire and Marine Ins. Co., No. C11-92Z, 2011 WL

21  2020749, *4–5 (W.D. Wash. May 24, 2011).

22

23

1    Because actual conflicts exist, the Court must determine whether Oregon or

2    Washington has the "most significant relationship" to the issues.  Seizer, 132 Wn.2d at

3    650.  "Washington courts follow the Restatement (Second) of Conflicts of Laws § 145 to

4    determine which state's law governs tort, IFCA, and CPA claims."  MKB Constructors v.

5    Am. Zurich Ins. Co., 49 F. Supp. 3d 814, 832 (W.D. Wash. 2014).  Section 145(1) directs

6    courts to determine the state with the most significant relationship to the occurrence and

7    the parties under the relevant factors stated in section 6.[3]  Restatement (Second) of

8    Conflict of Laws § 145(1).  Under Section 145(2), courts must take into account four

9    types of contacts in determining which state has the most significant relationship:  "(1)

10   the place where the injury occurred, (2) the place where the conduct causing the injury

11   occurred, (3) the domicile, residence, nationality, place of incorporation, and place of

12   business of the parties, and (4) the place where the relationship, if any, between the

13   parties is centered."  Restatement (Second) of Conflict of Laws § 145(2).

14        The first contact, namely the injury to Alaska Airlines resulting from Endurance's

15   failure to defend Alaska Airlines under the policy, occurred in Washington, as that is

16   where Alaska Airlines incurred the costs of defending itself against the Kekona Lawsuit

17   and where the Washington Superior Court entered judgment against it.  See Newmont

---

[3] Section 6 instructs that relevant factors in a choice of law analysis are:  "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6.

1    USA Ltd., 676 F. Supp. 2d at 1163 (concluding that where the alleged injury is lack of

2    performance of the duty to defend under the contract, the injury occurred where the

3    underlying lawsuit was filed and defended).  "Logically, when an insurance company acts

4    in bad faith or violates IFCA or CPA, its insured will experience that injury where the

5    insured is located."  MKB Constructors, 49 F. Supp. 3d at 833.

6        When analyzing the second contact—the place where the conduct causing the

7    injury occurred—courts generally consider where the insurance company makes its

8    coverage decisions.  Lange v. Penn Mut. Life Ins. Co., 843 F.2d 1175, 1179 (9th Cir.

9    1988); Polygon Nw. Co., 2011 WL 2020749, at *6; but see Travelers Prop. Cas. Co. of

10   Am. v. AF Evans Co., No. C10-1110-JCC, 2012 WL 4113279, *8 (W.D. Wash. Sept. 19,

11   2012) (concluding that the place where the conduct causing the injury occurred was the

12   state in whose court the insured failed to defend the insured).  Endurance is incorporated

13   under the laws of Delaware and is headquartered in New York.  Compl. at ¶ 1.2.  Thus,

14   the conduct causing injury did not occur in Washington or Oregon, and the Court gives

15   no weight to this contact.

16       The third contact considers the domicile, residence, nationality, place of

17   incorporation, and place of business of the parties.  Alaska Airlines is an Alaska

18   corporation with its principal place of business in Washington.  Compl. at ¶ 1.1.

19   Endurance is a Delaware corporation with its principal place of business in New York.

20   Id. at ¶ 1.2.  Ultimately, this contact slightly weighs in favor of applying Washington law

21   because, while Alaska Airlines has *a* place of business in Oregon, see Service Agreement

22   (docket no. 31-1 at 2), its *principal* place of business is in Washington.

23

1    Finally, the fourth contact analyzes the place where the relationship between the

2    parties is centered.  This contact is neutral.  The facts suggesting that Oregon law should

3    apply include the following:  Alaska Airlines and Huntleigh entered into the Service

4    Agreement in Oregon, an agreement which required Alaska Airlines to be named as an

5    additional insured in the Endurance Policy, and the place of performance of Huntleigh's

6    services under the Service Agreement was Oregon.  On the other hand, other facts

7    suggest that Washington law should apply:  the Endurance Policy provided that

8    Endurance owed a separate duty to defend and indemnify Alaska Airlines, which is

9    headquartered in Washington, the Kekona Lawsuit was filed in Washington, injury

10   resulting from Endurance's failure to defend Alaska Airlines occurred in Washington,

11   and the judgment against Alaska Airlines was entered in Washington.  Cf. Polygon Nw.

12   Co., 2011 WL 2020749, at *6 (determining that a relationship was centered in Oregon

13   where the insurance was procured through an Oregon insurance broker, the injury

14   occurred in Oregon, and the underlying case was being litigated in Oregon).  In sum, two

15   of the contacts are neutral and two of the contacts suggest that Washington law should

16   apply.

17       Moreover, one of the section 6 factors, the "relevant policies of the forum,"

18   weighs strongly in favor of applying Washington law.[4]  "Washington 'has a strong

19

20   _____

21   [4] Endurance cites Polygon Nw. Co. to argue that courts do not consider the relevant factors listed in
     section 6 unless the four contacts from section 145(2) are evenly balanced.  This is incorrect.  Section
     145(1) clearly states that "[t]he rights and liabilities of the parties with respect to an issue in tort are
22   determined by the local law of the state which, with respect to that issue, has the most significant
     relationship to the occurrence and the parties under the principles stated in § 6."  Similarly,

23

ORDER - 13

1    interest in protecting insureds who must resort to litigation to establish coverage.'" <u>MKB</u>

2    <u>Constructors</u>, 49 F. Supp. 3d at 834 (quoting <u>Axess Int'l, Ltd. v. Intercargo Ins. Co.</u>, 107

3    Wn. App. 713, 726, 30 P.3d 1 (2001)); <u>see</u> <u>also</u> <u>Travelers Prop. Cas. Co. of Am.</u>, 2012

4    WL 4113279, at *9 (noting that in a dispute over choice of law the "relevant policies of

5    the forum" factor weighed strongly in favor of applying Washington law).  Based on this

6    strong interest, the fact that two of the four contacts weigh in favor of applying

7    Washington law, and the presumption that Washington law applies, the Court concludes

8    that Washington law applies to Alaska Airlines' claims.[5]  <u>See</u> <u>Lange</u>, 843 F.2d at 1181.

9    The Court therefore DENIES Endurance's Cross-Motion for Partial Summary Judgment,

10   docket no. 30.

11   //

12   //

13

14   _____

15   <u>Polygon Nw. Co.</u> provides that the contacts from section 145(2) "are to be considered while applying the 'principles of the Restatement (Second) of Conflict of Laws § 6.'"  2011 WL 2020749 at *5.

16   [5] Endurance also argues that Alaska Airlines waived and/or should be estopped from contesting the application of Oregon law.  Endurance, however, only makes this argument under Oregon law, which the Court has determined does not apply to Alaska Airlines' breach of contract or non-contract claims.  Even

17   so, the Court is not persuaded by Endurance's argument.  Endurance first contends waiver and/or estoppel applies because "[t]hroughout the course of [Alaska Airlines'] tenders of the Kekona Lawsuit, it asserted

18   that Oregon law applied . . . and it took the same position throughout the arbitration proceeding."  CMPSJ at 23.  But these tenders were before Alaska Airlines had received a copy of the Endurance Policy and learned that it contained an additional insured endorsement and did not contain a choice of law provision.

19   <u>See</u> Endurance Policy (docket no. 28 at 90).  Prior to that, Alaska Airlines had based its tenders on the Service Agreement with Huntleigh, which contained a provision stating that Oregon law governed.

20   Service Agreement (docket no. 31-1 at 4).  After receiving the Endurance Policy, Alaska Airlines' tender to Endurance did not cite Oregon law.  <u>See</u> Tender Letter, Ex. E to Fetters Decl. (docket no. 28 at 123–

21   29).  Endurance also argues that because Alaska Airlines was already granted relief regarding the duty to defend based on Oregon law, applying Washington law in this case could lead to inconsistent rulings by

22   the arbitrator and this Court.  The Court, however, has already concluded that there is no conflict between Oregon and Washington law on the issue of Endurance's breach of the duty to defend.

23

2.      **Motion to Dismiss**

USAIG moves to dismiss the claims that Endurance asserted in its Third-Party Complaint against them for lack of supplemental jurisdiction and for failure to state a claim.[6]

Endurance argues that this Court has supplemental jurisdiction over its claims asserted in the Third-Party Complaint against USAIG—specifically claims for declaratory relief, statutory contribution, equitable contribution, and subrogation— pursuant to 28 U.S.C. § 1367(a).  See Resp. to MTD (docket no. 35).  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Thus, for supplemental jurisdiction to apply, "[t]he claims must form 'but one constitutional case' and 'derive from a common nucleus of operative fact.'" Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1173 (9th Cir. 2002) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)).

Even if the Court assumes, without deciding, that the claims asserted by Alaska Airlines against Endurance and the claims asserted by Endurance against USAIG, arise from a common nucleus of operative fact, the Court declines to exercise supplemental jurisdiction over the claims asserted against USAIG in the Third-Party Complaint

---

[6] Although Alaska Airlines joins USAIG's Motion to Dismiss, Alaska Airlines does not move to dismiss any of the third-party claims Endurance has asserted against it.  See Joinder (docket no. 33).

ORDER - 15

1   because of the complexity, cost, and time it would add to the case.  See United Mine

2   Workers of Am., 383 U.S. at 726 (a district court considers judicial economy,

3   convenience, fairness, and comity in considering whether to exercise its discretion to

4   assert supplemental jurisdiction).[7]  USAIG's Motion to Dismiss, docket no. 29, is

5   GRANTED, and all third-party claims asserted against USAIG are DISMISSED without

6   prejudice.

7   **Conclusion**

8        For the foregoing reasons, the Court ORDERS:

9        (1)    Alaska Airlines' Motion for Partial Summary Judgment, docket no. 27, is

10  GRANTED.

11       (2)    Endurance's Cross-Motion for Partial Summary Judgment, docket no. 30, is

12  DENIED.

13       (3)    USAIG's Motion to Dismiss Endurance's third-party claims asserted

14  against USAIG, docket no. 29, is GRANTED, these claims are dismissed without

15  prejudice, and United States Aircraft Insurance Group and United States Aviation

16  Underwriters Inc. are dismissed as third-party defendants.

17  //

18  //

19  //

20

21  _____

22  [7] Since the Court dismisses the claims against USAIG asserted in the Third-Party Complaint for lack of
    jurisdiction, it need not address USAIG's alternative argument for failure to state a claim.

23

ORDER - 16

1    (4)    The Clerk is directed to send a copy of this Order to all counsel of record.

2    IT IS SO ORDERED.

3    Dated this 3rd day of September, 2021.

4

5                                          Thomas S. Zilly
                                           United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 17