1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

5

6
ALASKA AIRLINES, INC.,

7
                    Plaintiff and Counter
                    Defendant,

8
        v.                                          C20-1444 TSZ

9
ENDURANCE AMERICAN                                  ORDER
INSURANCE CO.,

10
                    Defendant and

11
                    Counterclaimant.

12          THIS MATTER comes before the Court on the Motion for Partial Summary

13   Judgment ("MPSJ"), docket no. 45, filed by Alaska Airlines, Inc. ("Alaska Airlines") and

14   the Cross-MPSJ, docket no. 65, filed by Endurance American Insurance Company

15   ("Endurance").  Endurance has also filed three motions, docket nos. 78, 83, and 96, to

16   exclude and/or strike the expert testimony and declarations of David Beyer.  Having

17   reviewed all papers filed in support of, and in opposition to, the motions, the Court enters

18   the following Order.

19   **Background**

20          In this matter, Alaska Airlines and Endurance assert claims against each other

21   related to an insurance policy (the "Endurance Policy") issued to Huntleigh USA

22   Corporation ("Huntleigh").  In 2007, Alaska Airlines and Huntleigh entered into a

23

ORDER - 1

1   Service Agreement pursuant to which Huntleigh provided wheelchair escort services to

2   Alaska Airlines passengers at the Portland International Airport ("PDX").  Service

3   Agreement, Ex. 1 to Newsom Decl. (docket no. 31-1 at 1).  On June 7, 2017, Bernice

4   Kekona, who required wheelchair assistance, arrived in Portland, Oregon on an Alaska

5   Airlines flight from Maui, Hawaii.  When Kekona attempted on her own to find the gate

6   for her connecting flight to Spokane, Washington, she fell down an escalator in her

7   wheelchair and sustained several injuries, from which she later died.

8       Prior to Kekona's death, Alaska Airlines was presented with a claim for the

9   injuries she sustained.  As a result, on August 18, 2017, United States Aircraft Insurance

10  Group ("USAIG"), the liability insurance representative for Alaska Airlines, sent a letter

11  to Huntleigh.  Ex. 1 to Fetters Decl. (docket no. 39-1 at 1–7).  The letter referenced the

12  Service Agreement and tendered the claim for Kekona's injuries (the "Kekona Claim") to

13  Huntleigh and its insurer "for handling, defense, and indemnification on behalf of"

14  Alaska Airlines.  Id. (docket no. 39-1 at 3).  The tender letter also summarized the

15  Kekona Claim and identified the two Huntleigh employees that had assisted Kekona at

16  PDX.  Id. (docket no. 39-1 at 2).  The tender letter then referred to § 6 of the Service

17  Agreement, which was an indemnification provision that provided as follows:

18      "To the fullest extent permitted by law, Contractor [Huntleigh] shall
        indemnify, defend and hold harmless Alaska Airlines, its directors, officers,
19      employees and agents from and against any and all claims, damages, losses,
        fines, civil penalties, liabilities, judgments, costs and expenses of any kind
20      or nature whatsoever, including, but not limited to, interest, court costs and
        attorney's fees, which in any way arise out of or result from any act(s) or
21      omission(s) by Contractor (or anyone directly or indirectly employed by
        Contractor or anyone for whose acts Contractor may be liable) in the

22

23

ORDER - 2

performance or nonperformance of services under [this] Agreement, including but not limited to:

Death of or injury to any person or persons; . . . ."

Id. (docket no. 39-1 at 3). The tender letter further cited § 5 of the Service Agreement, which required Huntleigh to provide insurance covering its operations pursuant to the Service Agreement, and indicated that Alaska Airlines had been named as an "additional insured" on a general liability policy issued to Huntleigh by Everest Indemnity Insurance Company ("Everest").[1] Id.; see also Certif. of Liab. Ins. (docket no. 39-1 at 5). In sum, Alaska Airlines, through USAIG, tendered the Kekona Claim to Huntleigh and its insurer based on *both* the Service Agreement and the status of Alaska Airlines as an additional insured on the policy Huntleigh was contractually required to obtain.

Kekona's attorneys sent a demand letter dated August 25, 2017, to USAIG and Kern Wooley, P.C. ("Kern Wooley"), a law firm that administered claims tendered to Huntleigh's insurer (Endurance), requesting mediation and attaching a draft complaint. Ex. 3 to Fetters Decl. (docket no. 39-1 at 11–32). According to the *draft* complaint, which was captioned for commencement in Spokane County Superior Court, but was never filed, although Kekona was supposed to receive gate-to-gate escort services at PDX, she was assisted only to the outside of the arriving airplane's door and was then left

---

[1] Alaska Airlines and USAIG later learned that Everest was not Huntleigh's liability insurer; rather Huntleigh was insured by Endurance. As explained in more detail below, at the time USAIG sent the tender letter, neither it nor Alaska Airlines had a copy of the Endurance Policy. In fact, Alaska Airlines did not receive a copy of the Endurance Policy until 2019, when it was disclosed in connection with the arbitration between it and Huntleigh.

ORDER - 3

to find her own way to her connecting flight, after which she became confused and sustained serious injuries.  Id. at ¶¶ 44–46 & 48–49.  The *draft* complaint did *not* name Huntleigh as a defendant, and it incorrectly stated that an Alaska Airlines employee, rather than a Huntleigh employee, met Kekona on the plane and transferred her to her wheelchair.  Id. at ¶¶ 2, 3, & 42.

Kern Wooley sent a letter to USAIG dated September 13, 2017, confirming receipt of the demand letter and *draft* complaint, but denying USAIG's tender of the Kekona Claim.  Ex. 4 to Fetters Decl. (docket no. 39-1 at 34–36).  The denial letter indicated that, although Kern Wooley's investigation was ongoing, the firm did "not have any information that supports that [Kekona's] claim arises out of 'any act(s) or omission(s)' by Huntleigh."  Id. (docket no. 39-1 at 34–35).  Although Kern Wooley acknowledged that two Huntleigh agents assisted Kekona, the firm asserted that "the agents inquired on multiple occasions whether Ms. Kekona required any further assistance to which she declined."  Id. (docket no. 39-1 at 35).  The denial letter further represented that Kern Wooley had "no information that Alaska Airlines informed Huntleigh of [the] requested [gate-to-gate] service," and opined that "any failure to provide escort service appears to be the fault of Alaska Airlines."  Id. (docket no. 39-1 at 35–36).  Kern Wooley did, however, indicate that Endurance's parent company would consider mediation:

> Accordingly, Sompo[2] would not be opposed to an agreement to mediate with the express understanding that it does so in mutual agreement and in

---

2 In this tender-denial letter, Kern Wooley introduced itself as "administering the [Kekona Claim] on behalf of . . . Endurance American Insurance Co., a member of Sompo International."  Ex. 4 to Fetters

ORDER - 4

coordination with Alaska Airlines and USAIG, that any contribution to a settlement by the parties would be on an individual basis without right to seek contribution, and without any waiver of rights with respect to the tender if mediation is unsuccessful.

Id. (docket no. 39-1 at 36).

By letter dated October 16, 2017, the firm of Mills Meyers Swartling P.S. ("Mills Meyers") requested, on behalf of Alaska Airlines and USAIG, that "Huntleigh and its insurers promptly accept Alaska's tender of defense" as to the Kekona Claim.  Ex. 5 to Fetters Decl. (docket no. 39-1 at 42).  The letter informed Kern Wooley that, although the *draft* complaint "refers to the wheelchair agents as Alaska [Airlines] employees, the wheelchair agents who assisted Ms. Kekona . . . were actually employed by Huntleigh and were providing 'Wheelchair Escort Services' to Ms. Kekona pursuant to Huntleigh's Service Agreement . . . with Alaska [Airlines]."[3]  Id. (docket no. 39-1 at 39).

Kekona died on September 20, 2017.  In December 2017, Kekona's estate filed a survival and wrongful death action against Alaska Airlines, its parent company (Alaska

---

Decl. (docket no. 39-1 at 34).  Thus, the tender-denial letter is understood as conveying the position of both Sompo and Endurance.

[3] In a footnote in this tender letter, Mills Meyers sought clarification concerning the relationship between Everest and Endurance, and asked whether Huntleigh was insured under separate policies by both Everest and Endurance or whether Kern Wooley's prior reference to Endurance was in error.  Ex. 5 to Fetters Decl. (docket no. 39-1 at 38 n.1).  On behalf of Alaska Airlines and USAIG, Mills Meyers indicated that "[t]he renewed tender and demand for defense and indemnification on behalf of Alaska [Airlines] in this letter is intended to be effective with respect to Huntleigh and its applicable liability insurer, whether that insurer be Endurance or otherwise."  Id.  Thus, although Alaska Airlines did not yet have the Endurance Policy, it was clearly making its tender under any insurance that Huntleigh had, and on which Alaska Airlines was an additional insured, which included the Endurance Policy.

Air Group, Inc.), and Huntleigh[4] in King County Superior Court ("Kekona Lawsuit").
See Kekona Compl., Ex. A to Fetters Decl. (docket no. 28).  Importantly, in naming both
Alaska Airlines and Huntleigh as defendants, the complaint alleged that both "Alaska
Airlines and Huntleigh were negligent" and that they "were acting in concert and
therefore are jointly and severally liable to Plaintiff."  Id. at ¶¶ 139 & 143.

In August 2018, Mills Meyers sent another letter, this time on behalf of Alaska
Airlines and Alaska Air Group, Inc., requesting that "Huntleigh and its insurers promptly
accept this renewed tender for defense and indemnity" as to the Kekona Claim.  Ex. B to
Fetters Decl. (docket no. 28 at 28 & 30).  The tender letter asserted as follows:

> [Huntleigh's] denial of [our previous] tenders constitutes a material
> breach of contract.  We ask that Huntleigh promptly reverse its decision and
> accept Alaska's tender of defense and indemnity.  If Huntleigh refuses to
> accept Alaska's tender, Alaska will initiate an AAA arbitration against
> Huntleigh for declaratory relief and breach of contract.

Id. (docket no. 28 at 28).  The tender letter also explained why counsel for Alaska
Airlines and Alaska Air Group, Inc. believed the Kekona Lawsuit had triggered the duty
to defend:

> Here, the [Service] Agreement requires Huntleigh to defend and
> indemnify Alaska [Airlines] for claims that "in any way arise out of or result
> from any act(s) or omission(s) by Contractor . . . in the performance or
> nonperformance of services under this Agreement."  The Complaint alleges
> that Huntleigh's employees "abandoned" Mrs. Kekona and did not escort her
> to the gate for her connecting flight to Spokane, and that Mrs. Kekona was
> "forced to find her own gate without the required escort."  The Complaint
> alleges "it was the duty and responsibility of Defendant Huntleigh, as

---

[4] Huntleigh was later dismissed from the Kekona Lawsuit, which was removed from King County
Superior Court to this District, for lack of personal jurisdiction.  Estate of Kekona v. Alaska Airlines, Inc.,
No. C18-116-JCC, 2018 WL 1737968 (W.D. Wash. Apr. 11, 2018).

ORDER - 6

1  Defendant Alaska Airlines' agent, to provide gate-to-gate escort service to
2  [Kekona]," and "upon [Kekona's] arrival, Defendant Huntleigh breached its
   duty by failing to provide [Kekona] the required gate-to-gate escort," and
3  "[Kekona] sustained fatal injuries as a direct and proximate result of
   Defendant Huntleigh's acts and omissions."   The Complaint also alleges
4  causes of action against Huntleigh for allegedly failing to adequately train
   and supervise its own employees.   Although the Alaska Airlines Defendants
5  deny Plaintiff's allegations and believe that none of the defendants are at
   fault, Plaintiff's allegations are sufficient to trigger Huntleigh's duty to
6  defend under the Agreement and Oregon law.

7          Plaintiff's allegations do not involve a request for indemnity for loss
   "caused solely by the acts or omissions of Alaska [Airlines]," because the
8  Complaint alleges independent acts of negligence against Huntleigh for
   which Plaintiff seeks to impose joint liability upon the Alaska Airlines
9  Defendants.   In addition, the allegation that "Huntleigh alleges Alaska
   Airlines failed to communicate to Huntleigh that [Kekona] required the gate-
10  to-gate assistance, is irrelevant for purposes of Huntleigh's contractual
   defense and indemnity obligations.

11  Id. (docket no. 28 at 30) (citations and footnote omitted).

12      By letter dated October 18, 2018, Kern Wooley again denied Alaska Airlines'

13  tender.  Ex. C to Fetters Decl. (docket no. 28 at 42–43).  Kern Wooley reasoned that

14  Huntleigh was asked to provide and offered only "aisle chair service" to Kekona, that the

15  firm had "received no evidence to establish that . . . Huntleigh was engaged or should

16  have been engaged in a wheelchair operation . . . in accordance with the Wheelchair

17  Service Agreement," and "the accident, which is the subject of the Kekona Lawsuit, did

18  not arise out of the performance or nonperformance of Huntleigh under the Agreement."

19  Id.

20      On February 19, 2020, counsel for Alaska Airlines and Alaska Air Group, Inc.,

21  who had switched law firms and was then practicing with Stokes Lawrence, P.S. ("Stokes

22  Lawrence"), and who had received the Endurance Policy during the arbitration process

23

1   with Huntleigh, sent yet another tender letter, this time directly to Endurance, at two

2   different addresses in New York and via The Corporation Trust Company and Paracorp

3   Incorporated.  Ex. E to Fetters Decl. (docket no. 28 at 123–29).  As indicated in the letter

4   from Stokes Lawrence, the Endurance Policy contained an endorsement, which included

5   as an Additional Insured any person or organization on whose behalf Huntleigh

6   performed operations and to whom Huntleigh provided a service.  Id. (docket no. 28 at

7   124); see Endurance Policy, Ex. D to Fetters Decl. (docket no. 28 at 90).  The Endurance

8   Policy does not contain a choice-of-law provision.

9         Sompo International Insurance ("Sompo"), acting on Endurance's behalf, denied

10   this tender by letter dated April 13, 2020, "for all the reasons previously set forth," and

11   stated that "it has always been undisputed that Huntleigh was not engaged by Alaska

12   [Airlines] to perform wheelchair services operations on behalf of Alaska Airlines for

13   [Kekona's] benefit."  Ex. F to Fetters Decl. (docket no. 28 at 131).  The letter was signed

14   by the same attorney at Kern Wooley who had authored the prior correspondence

15   denying tenders by Alaska Airlines, Alaska Air Group, Inc., and/or USAIG.  Importantly,

16   the April 13, 2020, denial letter acknowledged that Alaska Airlines had previously

17   tendered the Kekona Claim and Kekona Lawsuit under *both* the Service Agreement and

18   as an additional insured on the Endurance Policy:

19         [T]his claim and lawsuit have been tendered previously to Huntleigh and its
         insurer by Alaska [Airlines] as respects a Services Agreement between
20         Huntleigh and Alaska [Airlines] and as respects Alaska [Airlines'] purported
         status as an additional insured on Huntleigh's policy.  Sompo has responded
21         previously to Alaska [Airlines] by letters dated September 13, 2017, and
         October 18, 2018.

22

23

1   Id.

2          In September 2020, Alaska Airlines filed this action against Endurance alleging

3   breach of contract, bad faith, and violations of Washington's Insurance Fair Conduct Act

4   ("IFCA") and Consumer Protection Act ("CPA").  Compl. (docket no. 1 at 20–23).  In

5   March 2021, Endurance filed its Answer, Counterclaim, and Third-Party Complaint,

6   impleading USAIG and related entities,[5] and asserting claims for declaratory judgment,

7   contribution, and subrogation.  Answer (docket no. 11 at 21 & 35–40).

8          In June 2021, Alaska Airlines filed a Motion for Partial Summary Judgment on the

9   issue of whether Endurance breached its duty to defend.  Alaska Airlines MPSJ (docket

10  no. 27).  In its response and cross-motion, docket no. 30, Endurance did not contest that

11  its obligation to defend Alaska Airlines had been triggered, and the Court concluded that

12  Endurance had breached its duty to defend.  Order at 7–9 (docket no. 44).  The Court

13  further determined that Washington law applied to the non-contractual claims.  Id. at 10–

14  14.

15         Alaska Airlines now moves for partial summary judgment on liability, asserting

16  that Endurance's breach of its duty to defend was in bad faith and that Endurance

17  violated IFCA and the CPA.  Alaska Airlines also asks the Court to rule that estopping

18  Endurance from denying coverage is an appropriate remedy for its breach.  In connection

19  with Alaska Airlines' motion for partial summary judgment on its extra-contractual

20  _____

21  [5] The Court has declined to exercise supplemental jurisdiction over Endurance's third-party claims
    against USAIG and related entities, and those claims have been dismissed without prejudice.  See Order
22  at 15–16 (docket no. 44).

23

ORDER - 9

claims, it seeks damages for alleged increases in insurance premiums, the fees and costs

incurred in the Huntleigh arbitration, and other costs associated with Alaska Airlines'

management of the underlying Kekona Lawsuit.  See Reply at 11 (docket no. 72).  Alaska

Airlines estimates that the total amount of extra-contractual damages exceed $5 million.

Endurance cross-moves for partial summary judgment, arguing that Alaska Airlines

cannot meet its burden to prove essential elements of its extra-contractual claims.

Endurance further asks the Court to exclude the testimony of Alaska Airlines' expert

witness David Beyer.

**Discussion**

**I.        Summary Judgment Standard**

        The Court shall grant summary judgment if no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if

it might affect the outcome of the suit under the governing law.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the

adverse party must present affirmative evidence, which "is to be believed" and from

which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the

record, however, taken as a whole, could not lead a rational trier of fact to find for the

non-moving party, summary judgment is warranted.  See Beard v. Banks, 548 U.S. 521,

529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to

1    establish the existence of an element essential to that party's case, and on which that

2    party will bear the burden of proof at trial.'" (quoting <u>Celotex</u>, 477 U.S. at 322)).

## II.    Bad Faith

4        Alaska Airlines contends that Endurance's denials of the tenders of the Kekona

5    Claim and Kekona Lawsuit constituted bad faith as a matter of law.  The Court agrees.

6    "An insurer acts in bad faith if its breach of the duty to defend was unreasonable,

7    frivolous, or unfounded."  <u>Am. Best Food, Inc. v. Alea London, Ltd.</u>, 168 Wn.2d 398,

8    412, 229 P.3d 693 (2010).  The duty to defend is broader than the duty to indemnify, and

9    it "arises when a complaint against the insured, construed liberally, alleges facts which

10   could, if proven, impose liability upon the insured within the policy's coverage."  <u>Truck</u>

11   <u>Ins. Exch. v. Vanport Homes, Inc.</u>, 147 Wn.2d 751, 760, 58 P.3d 276 (2002).  In

12   Washington, after a tender is made, "[t]he duty to defend generally is determined from

13   the 'eight corners' of the insurance contract and the underlying complaint."[6]  <u>Expedia,</u>

14   <u>Inc. v. Steadfast Ins. Co.</u>, 180 Wn.2d 793, 803, 329 P.3d 59 (2014).  The insurer must

15   give the insured the benefit of the doubt when determining whether the insurance policy

16   covers the allegations in the complaint.  <u>Id.</u>  Courts consider whether the denial of

17   coverage was unreasonable when it occurred, and not whether later developments could

18   have vindicated the insurer's decision.  <u>Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship</u>,

19   106 F.3d 1465, 1470 (9th Cir. 1997).  An insured need not prove that the insurer acted

20

21   _____

22   [6] Washington has two exceptions to the "eight corners" rule, both of which favor the insured, <u>see</u> <u>Expedia</u>, 180 Wn.2d at 803, and neither of which are asserted or apply in this case.

23

1    dishonestly or intended to act in bad faith.  Moratti ex rel. Tarutis v. Farmers Ins. Co. of

2    Wash., 162 Wn. App. 495, 506, 254 P.3d 939 (2011).  Only "a reasonable basis for denial

3    of an insured's claim constitutes a complete defense to any claim that the insurer acted in

4    bad faith."  Dombrosky v. Farmers Ins. Co. of Wash., 84 Wn. App. 245, 260, 928 P.2d

5    1127 (1996).

6    　　　Endurance's denials were not premised on reasonable grounds.  Although

7    Endurance repeatedly justified its tender denials by saying that Kekona's injuries did not

8    arise from the acts or omissions of Huntleigh, this proposition is directly contradicted by

9    the allegations in the complaint filed in the Kekona Lawsuit and the recitations of facts

10   set forth in the tender letters.  The complaint in the Kekona Lawsuit alleged that, as

11   Alaska Airlines' agent, Huntleigh had the duty to provide Kekona with gate-to-gate

12   escort service, Huntleigh breached its duty by failing to provide such service, and that

13   Kekona "sustained fatal injuries as a direct and proximate result of Defendant

14   Huntleigh's acts and omissions."  Kekona Compl. at ¶¶ 134, 135, & 137 (docket no. 28 at

15   22–23).  Indeed, in its answer to the complaint in this lawsuit, Endurance acknowledged

16   that "Kekona's estate disputes that she declined further assistance and maintains that the

17   Alaska [Airlines] and Huntleigh employees left Ms. Kekona to navigate the airport

18   herself."  Answer at ¶ 3.10 (docket no. 11).  Each tender letter explained that Kekona was

19   asserting a failure to provide the requested gate-to-gate service and contesting any

20   assertion that she declined help to get to her connecting flight.  See Ex. 1 to Fetters Decl.

21   (docket no. 39-1 at 2) ("Counsel for Mrs. Kekona alleges that she did not decline

22   additional assistance and was left to navigate the airport on her own, which ultimately

23

1    caused her to become confused, leading to her unfortunate accident."); Ex. 5 to Fetters

2    Decl. (docket no. 39-1 at 39) (citing the second *draft* complaint attached thereto); Ex. B

3    to Fetters Decl. (docket no. 28 at 30) ("The Complaint alleges that Huntleigh's

4    employees 'abandoned' Mrs. Kekona and did not escort her to the gate for her connecting

5    flight . . . ."); Ex. E to Fetters Decl. (docket no. 28 at 125).  Given the allegations known

6    to Endurance at the time of its denials, which made clear that the Kekona Claim and the

7    Kekona Lawsuit involved injuries allegedly arising from the acts or omissions of

8    Huntleigh, no reasonable interpretation within the "eight corners" of the Endurance

9    Policy and the anticipated or operative pleading supported a view that the duty to defend

10   was not owed to Alaska Airlines, as an additional insured.

11            Although the Court later determined that Washington law applies, Endurance

12   asserts that its reliance on Oregon law to conclude that Alaska Airlines was not an

13   additional insured was reasonable.  In refusing to tender a defense, however, Endurance

14   (or those communicating on its behalf) never cited to Oregon law.  See Ex. 4 to Fetters

15   Decl. (docket no. 39-1 at 34–36); Ex. C to Fetters Decl. (docket no. 28 at 42–43); Ex. F to

16   Fetters Decl. (docket no. 28 at 131).[7]  The Court will nevertheless address the merits of

17   Endurance's contentions under Fred Shearer & Sons, Inc. v. Gemini Insurance Co.

18   ("Shearer"), 237 Or. App. 468, 240 P.3d 67 (2010), which held that, when determining

19   whether a party seeking coverage constitutes an insured within the meaning of the policy,

20

21   _____

22   [7] Endurance's denial letters instead gave factual explanations and opined that Huntleigh was not engaged
     by Alaska Airlines to perform wheelchair services operations.

23

ORDER - 13

1   courts may look outside the complaint.  Id. at 476–77.  Endurance argues that, because

2   the Service Agreement had an Oregon choice-of-law provision, it reasonably applied

3   Oregon law when considering the tenders from Alaska Airlines.  This reasoning does not

4   establish that the denial of coverage was reasonable.

5          Even if Oregon law governed this insurance dispute, the Shearer standard applies

6   only when an entity's status as an insured cannot be determined from the face of the

7   complaint and the policy.  See Clarendon Am. Ins. Co. v. State Farm Fire & Cas. Co.,

8   No. 3:11-CV-01344, 2013 WL 54032, at *6 (D. Ore. Jan. 3, 2013); see also W. Hills

9   Dev. Co. v. Chartis Claims, Inc., 360 Or. 650, 666, 385 P.3d 1053 (2016) (distinguishing

10  Shearer, which involved an "open class of 'additional insureds," defined "entirely by the

11  relationship between the otherwise unidentified class members and the named insured,

12  and the situation of West Hills Development Company, which was "designated by name"

13  as an additional insured).  Here, to the extent information outside the complaint and the

14  policy was needed to ascertain whether Alaska Airlines was an additional insured, the

15  extrinsic evidence, including the Service Agreement, contradicted the decision reached

16  by Endurance.  Endurance's analysis under the Shearer exception is deeply flawed, and

17  its denial of a defense based upon its "questionable interpretation of law" constitutes bad

18  faith as a matter of law.  See Am. Best Food, 168 Wn.2d at 413.

19         In addition, Endurance's post hoc invocation of Oregon law lacks merit.  Alaska

20  Airlines tendered the Kekona Claim and Kekona Lawsuit to Endurance under both the

21  Service Agreement and the Endurance Policy, and the Endurance Policy did not contain a

22  choice-of-law provision.  Given that the Endurance Policy had no choice-of-law

23

1   provision and that the Kekona Lawsuit was filed in Washington, any decision to ignore

2   Washington law in denying a defense to Alaska Airlines was unreasonable as a matter of

3   law.[8]

4           Alaska Airlines also contends that Endurance's breach of its duty to defend was

5   unreasonable considering Endurance's decision to defend Huntleigh without reservation.

6   The Court agrees.  The Endurance Policy required Endurance to "pay those sums that the

7   insured becomes legally obligated to pay as damages because of **bodily injury** or

8   **property damage** to which this insurance applies resulting from [Huntleigh's] **aviation**

9   **operations**."  Endurance Policy (docket no. 28 at 59).  Similarly, the Service Agreement

10  provided that Huntleigh would defend and indemnify Alaska Airlines for any death or

11  injury to any person arising out of or resulting from any acts or omissions of Huntleigh.

12  See Ex. 1 to Fetters Decl. (docket no. 39-1 at 3) (citing Service Agreement § 6).  The

13  Court has difficulty imagining how the Kekona Claim and/or Kekona Lawsuit triggered

14  Endurance's duty to defend Huntleigh, but not Alaska Airlines.  The duty to defend

15  Huntleigh was triggered by the same allegations made against Alaska Airlines, namely

16  that a bodily injury resulted from Huntleigh's operations, and that Huntleigh had acted as

17  an agent of Alaska Airlines.  By agreeing to defend Huntleigh without reservation,

18

19  _____

20  [8] The expert report submitted by Endurance does not create an issue of fact on whether it acted in bad
    faith.  Although the declaration accompanying the report states that Endurance's denial of the tenders
    "was based upon its view of the applicable law, and its understanding of the facts and circumstances of

21  the case," it does not address whether these interpretations of the law and facts were reasonable.
    McSwain Decl. at ¶ 7 (docket no. 68).  The expert report further describes as "noteworthy" that the
    arbitrator used "multiple pages of reasoning" when determining that Shearer was inapplicable to this case.

22  Ex. 1 to McSwain Decl. (docket no. 68-1 at 8).  This observation is entirely irrelevant.

23

ORDER - 15

1  Endurance acknowledged that the Kekona Complaint alleged that Kekona's injuries and

2  death were caused by the acts or omissions of Huntleigh, and therefore Endurance's

3  failure to also provide a defense to Alaska Airlines was unreasonable.

4         The duty to defend Alaska Airlines was triggered, not only by the various tender

5  letters, but also by Kekona's demand for mediation, which qualified as a "suit."  The

6  Endurance Policy applied to "any suit" seeking damages because of bodily injury or

7  property damage to which the Endurance Policy applied.  Endurance Policy (docket

8  no. 28 at 64).  The Endurance Policy defined "suit" to include arbitration proceedings and

9  any other alternative dispute resolution proceedings to which the insured submits with

10  Endurance's consent.  Id. at 74.  As a result, Kekona's mediation demand also triggered

11  the duty to defend.[9]  The denial letter issued in September 2017, in response to USAIG's

12  August 2017 tender and Kekona's mediation demand, breached Endurance's duty to

13  defend, and each of the tender denials thereafter constituted an additional breach of

14  Endurance's duty to defend.

15         "Bad faith is typically a question of fact, but summary judgment is appropriate

16  when 'reasonable minds could not differ' that the refusal to defend was unreasonable."

17  Osborne Constr. Co. v. Zurich Am. Ins. Co., 356 F. Supp. 3d 1085, 1096 (W.D. Wash.

18  2018) (quoting Smith v. Safeco Ins. Co., 150 Wn.2d 478, 486, 78 P.3d 1274 (2003)).

19  Reasonable minds cannot differ in this case.  Endurance put its own interests ahead of

20  _____

21  [9] Although Endurance now asserts that it never consented to the mediation with Kekona, Kern Wooley
   indicated on Sompo's and Endurance's behalf that they "would not be opposed to an agreement to
22  mediate."  Ex. 4 to Fetters Decl. (docket no. 39-1 at 36).

23

those of Alaska Airlines, which was one of its insureds, failed to give the benefit of any

doubt to this insured, and did not avail itself of legal options such as proceeding under a

reservation of rights or seeking declaratory relief.  The Court concludes that Endurance's

breach of its duty to defend was in bad faith as a matter of law.[10]

## III.   Presumption of Harm

An insurer that, in bad faith, refuses or fails to defend is estopped from denying

coverage.  Truck Ins., 147 Wn.2d at 759.  To prevail on a bad faith claim and obtain the

estoppel remedy, the insured must prove harm.  See Safeco Ins. Co. of Am. v. Butler, 118

Wn.2d 383, 389, 823 P.2d 499 (1992).  Alaska Airlines contends that it is entitled to a

presumption of harm.  Under Washington law, an insurer's bad faith breach of contract

gives rise to a rebuttable presumption of harm.  Kirk v. Mt. Airy Ins. Co., 134 Wn.2d

558, 562, 951 P.2d 1124 (1998).  The insurer can rebut the presumption by showing by a

preponderance of the evidence that its acts did not prejudice the insured.  Mut. of

Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wn.2d 903, 920, 169 P.3d 1 (2007).

---

[10] Because the Court determines that Endurance's breach of the duty to defend was unreasonable and therefore constituted bad faith as a matter of law, the Court also concludes that Endurance violated IFCA. See RCW 48.30.015(1) (creating a cause of action against insurers who unreasonably deny coverage or benefits).  Endurance argues that Alaska Airlines' IFCA claim must be dismissed because it cannot prove actual damages.  See id. ("Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to recover the actual damages sustained.").  As addressed below, Endurance's argument fails because Alaska Airlines seeks actual damages proximately caused by Endurance's bad faith denial of a defense, such as premium-related damages and the costs and fees associated with pre-suit arbitration.  IFCA also gives courts the discretion to "increase the total award of damages to an amount not to exceed three times the actual damages."  RCW 48.30.015(2).  The amount of damages, and whether Endurance is liable for treble damages, must await further proceedings.

1    Here, because Endurance's breach was in bad faith, Alaska Airlines is entitled to a

2    presumption of harm.  Although Endurance bears the burden of showing that its breach of

3    its duty to defend did not harm Alaska Airlines, Alaska Airlines has put forth several

4    theories of harm.  Specifically, Alaska Airlines asserts that it was harmed due to increase

5    in its insurance premiums, the fees and costs incurred in the arbitration with Huntleigh,

6    and "other costs associated with Alaska Airlines having to manage the litigation."  Reply

7    at 11 (docket no. 72).  The thrust of Endurance's response is that Alaska Airlines cannot

8    prove harm because the defense of the Kekona Lawsuit was fully funded by another

9    insurer.  In support of this argument, Endurance relies on <u>Ledcor Industries (USA), Inc.</u>

10   <u>v. Mutual of Enumclaw Insurance Co.</u>, 150 Wn. App. 1, 206 P.3d 1255 (2009).  In

11   <u>Ledcor</u>, the Washington Court of Appeals affirmed a trial court's finding that an insurer

12   had successfully rebutted the presumption.  <u>Id.</u> at 11.  According to the <u>Ledcor</u> Court, the

13   facts established that the insured "ultimately received what the policy entitled it to, and

14   therefore suffered no harm due to [the insurer's] failure to timely accept tender and

15   defend."  <u>Id.</u>  Because the insured suffered no harm, the trial court did not err in

16   awarding no damages for bad faith.  <u>Id.</u>

17   Endurance's reliance on the <u>Ledcor</u> decision is misplaced.  First, the bad faith

18   determination in this case places the burden to rebut the presumption of harm on

19   Endurance.  Endurance "cannot evade or sustain its burden of proof by arguing that the

20   *insured* has not made a showing that [it] *did* suffer harm."  <u>See</u> <u>Specialty Surplus Ins. Co.</u>

21   <u>v. Second Chance, Inc.</u>, 412 F. Supp. 2d 1152, 1163 (W.D. Wash. 2006).  Second, even

22   assuming Endurance is correct that Alaska Airlines cannot show damages related to the

23

1   costs of defending the Kekona Lawsuit, Alaska Airlines has asserted other theories of

2   harm.  Regarding the costs caused by the arbitration with Huntleigh, Endurance argues

3   that Alaska Airlines cannot point to any provision of the Endurance Policy that would

4   entitle it to fees and costs associated with pursuing a claim against Huntleigh.  Resp. at 17

5   (docket no. 66).  This assertion misses the point.  Alaska Airlines seeks recovery of these

6   fees as tort damages proximately caused by Endurance's bad faith denial of a defense.

7   Whether these fees would be recoverable under the Endurance Policy is irrelevant.  The

8   Court concludes that Endurance has failed, as a matter of law, to rebut the presumption of

9   harm.[11]  Accordingly, the Court concludes that Alaska Airlines has proven its bad faith

10  claim, and that coverage by estoppel is appropriate in this case.  See Safeco, 118 Wn.2d

11  at 394.

12  **IV.    Consumer Protection Act**

13          In connection with its CPA claim, Alaska Airlines has clarified that the sole relief

14  it seeks in this motion for partial summary judgment is "an order that Endurance's denial

15  of coverage was unreasonable, unfair, and deceptive."  Reply at 13 (docket no. 72).  The

16  CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or

17

18  [11] To be clear, the Court's ruling is based solely on the fees and costs related to the arbitration with
    Huntleigh.  The question of whether Alaska Airlines suffered other harms, for example, increased
19  insurance premiums, which Endurance has failed to rebut involves genuine disputes of material fact.
    Endurance argues that Alaska Airlines' increased-premiums theory is "speculative at best."  Resp. at 21
20  (docket no. 66).  In an attempt to rebut this claim, Endurance submits testimony from its expert that the
    $5.1 million claim on the loss run of Alaska Airlines would exist regardless of whether Endurance had
21  provided the defense and paid the judgment.  McSwain Decl. at ¶ 14 (docket no. 68).  Alaska Airlines
    disputes this opinion, asserting that had Endurance provided a defense, the losses from the Kekona
22  Lawsuit would not be reflected in the loss runs of its aviation insurers.  See Beyer Decl. at ¶ 8 (docket
    no. 77).  This issue must await trial.

23

practices in the conduct of any trade or commerce." RCW 19.86.020.  To prevail on a

private CPA claim, a plaintiff must prove (1) an unfair or deceptive act or practice,

(2) occurring in trade or commerce, (3) affecting the public interest, (4) an injury to the

plaintiff's business or property, and (5) causation.  Panag v. Farmers Ins. Co. of Wash.,

166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing Hangman Ridge Training Stables, Inc. v.

Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).  Whether a certain act

or practice is "unfair or deceptive" is a question of law.  Id. at 47.

A violation of RCW 48.30.010, which prohibits insurers from engaging in unfair

or deceptive acts or practices as defined by the insurance commissioner, constitutes a per

se unfair or deceptive act or practice for purposes of the CPA.  Van Noy v. State Farm

Mut. Auto. Ins. Co., 98 Wn. App. 487, 496, 983 P.2d 1129 (1999).  A violation of any of

the provisions of WAC 284-30-330 or WAC 284-30-350 is violation of RCW 48.30.010

and satisfies the first element of a CPA claim.  Id.  Alaska Airlines contends that

Endurance violated WAC 284-30-330(13), which defines as an unfair or deceptive act or

practice "[f]ailing to promptly provide a reasonable explanation of the basis in the

insurance policy in relation to the facts or applicable law for denial of a claim or for the

offer of a compromise settlement."  Alaska Airlines further contends that Endurance

violated WAC 284-30-350(1), which provides that "[n]o insurer shall fail to fully

disclose to the first party claimants all pertinent benefits, coverages or other provisions of

an insurance policy or insurance contract under which a claim is presented."

In response, Endurance contends that its "technical" violations of these WAC

provisions are not actionable because its conduct was reasonable.  Resp. at 22–23 (docket

no. 66).  Although a reasonable basis for denial of an insured's claim would be a complete defense to any claim that an insurer violated the CPA, see Dombrosky, 84 Wn. App. at 260, the Court has concluded that Endurance's breach of its duty to defend was unreasonable.  Accordingly, the Court concludes that Endurance committed an unfair or deceptive act or practice under the CPA.

## V.    David Beyer's Testimony

Endurance moves to preclude David Beyer, Director of Risk Management for Alaska Airlines, from offering his opinion concerning the quantification of insurance premium damages.  As the party offering the expert testimony, Alaska Airlines bears the burden of establishing the admissibility of Beyer's testimony by a preponderance of the evidence.  See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council, 683 F.3d 1144, 1154 (9th Cir. 2012).  "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" (i) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (ii) "the testimony is based on sufficient facts or data," (iii) "the testimony is the product of reliable principles and methods," and (iv) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)–(d).  Rule 702 is liberally construed in favor of admissibility.  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588 (1993).

The trial judge is tasked with ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Id. at 597.  In determining whether expert testimony is reliable, the Court may consider certain factors, such as

1   testing, peer review, error rates, and acceptability in the relevant scientific community.

2   See id. at 593–94.  But "the test of reliability is 'flexible,' and Daubert's list of specific

3   factors neither necessarily nor exclusively applies to all experts or in every case."

4   Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).  Courts, however, must

5   take care "to assure that a proffered witness truly qualifies as an expert, and that such

6   testimony meets the requirements of Rule 702."  Jinro Am. Inc. v. Secure Invs., Inc., 266

7   F.3d 993, 1004 (9th Cir. 2001).

8         On February 28, 2022, Alaska Airlines disclosed Beyer's anticipated testimony.

9   See Ex. A to Neal Decl. (docket no. 84).  Beyer is expected to testify concerning his

10  calculation of increased insurance premiums.  Id.  In his capacity as Director of Risk

11  Management for Alaska Airlines, Beyer is responsible for "procurement of a wide variety

12  of insurance products covering the vast array of liability and property exposures

13  associated with the operations" of Alaska Airlines and its subsidiaries.  Beyer Decl. at ¶ 3

14  (docket no. 40).  Based upon his years of experience in negotiating and procuring

15  insurance for Alaska Airlines, he considers himself a "sophisticated consumer of aviation

16  insurance."  Id. at ¶ 7.  Using "historical, financial" data, Beyer has estimated the increase

17  in premiums Alaska Airlines has paid, and is likely to pay in the future, based on the

18  presence of the Kekona Lawsuit on its loss run from 2017 through 2027.  Beyer Decl. at

19  ¶ 4 (docket no. 91); see also Beyer Decl. at ¶ 4 (docket no. 77) (explaining that the

20  Kekona Lawsuit will no longer appear on Alaska Airlines' loss run after 2027).

21  According to Beyer, when calculating an aviation insurance premium, the total number of

22  claims on an airline's loss run is not relevant.  Beyer Decl. at ¶ 11 (docket no. 77).

23

1   Instead, "it is the cumulative annual average of settlements, judgments, and claims

2   expenses over the 10-year loss history that matters." Id.  Thus, to quantify the impact of

3   the Kekona action, Beyer looked to the amount the Kekona action increased that average

4   on a yearly basis. Id.; Beyer Decl. at ¶ 11 (docket no. 91).  Using this methodology,

5   Beyer calculated that Alaska Airlines will suffer over $5 million in total damages as a

6   result of the Kekona action appearing on its loss run. See Ex. A to Beyer Decl. (docket

7   no. 92) (filed under seal); Beyer Decl. at ¶ 6 (docket no. 77); Beyer Decl. at ¶¶ 14–17

8   (docket no. 91).

9         As an initial matter, Endurance argues that Beyer's expert disclosure does not

10   comply with Rule 26(a)(2)(C).  Pursuant to Rule 26(a)(2)(C), disclosures from witnesses

11   who are not required to provide a written report must state the subject matter on which

12   the witness is expected to present evidence and a summary of facts and opinions about

13   which the witness is expected to testify.  Endurance argues that Alaska Airlines'

14   Rule 26(a)(2)(C) disclosure fails to provide an adequate summary of the opinions and

15   facts concerning which Beyer will testify.  Endurance, however, does nothing more than

16   recite the requirements for disclosures under Rule 26(a)(2)(C).  It does not explain how

17   Alaska Airlines' disclosure is inadequate.  Even if the Court accepts Endurance's

18   argument that Alaska Airlines' disclosure is somehow deficient, the alleged deficiency is

19   harmless in light of the fact that Endurance has deposed Beyer on multiple occasions,

20   including in his capacity as an expert on March 31, 2022.  See Beyer Dep. (docket

21   no. 86).

22

23

1    Endurance also contends that Beyer's anticipated testimony should be excluded

2    under Rule 702 and <u>Daubert</u> because it is unreliable.  Endurance argues that Beyer's

3    methodology (i) lacks peer review, (ii) is unsupported, (iii) excludes claim-specific

4    information, other major losses, publicly available data on the broader aviation insurance

5    market, and post-COVID trends in the aviation market, and (iv) ignores the subjective

6    nature of aviation insurance negotiations.  Mot. to Exclude at 4–9 (docket no. 83).  Beyer

7    does not dispute that he has never seen any underwriter, agent, or broker use his

8    methodology to quantify a specific claim's purported effect on an insurance premium.

9    Beyer Dep. at 24:2–11 (docket no. 86).  Similarly, Beyer does not dispute that his

10   methodology is not peer-reviewed.  <u>Id.</u> at 24:24–25:3.  But neither of these factors is

11   dispositive.  The test of reliability is flexible, <u>Kumho Tire</u>, 526 U.S. at 141, and

12   Endurance ignores that Beyer's anticipated testimony is based on his knowledge of, and

13   experience in, the aviation insurance marketplace.  Although Beyer's precise

14   methodology has not been peer reviewed, it is not particularly complex.  <u>See</u> Beyer Decl.

15   at ¶¶ 12–13 (docket no. 91) (applying his methodology to the 2017–2018 Renewal Policy

16   Year); <u>see also</u> <u>Primiano v. Cook</u>, 598 F.3d 558, 565 (9th Cir. 2010) ("Peer reviewed

17   scientific literature may be unavailable because the issue may be too particular, new, or

18   of insufficiently broad interest, to be in the literature.").  Further, Beyer contends that his

19   methodology is supported by what is common knowledge in the industry, namely that

20   claims drive premium costs.  Beyer Dep. at 24:12–23.

21    The Court concludes that Endurance's challenges go to the weight, not the

22   admissibility, of Beyer's testimony.  <u>See</u> <u>City of Pomona v. SQM N. Am. Corp.</u>, 750

23

1   F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of the evidence are

2   within the province of a fact finder, not a trial court judge.").  Endurance's view that

3   Beyer's opinion is unreliable because he failed to consider a variety of factors may be

4   explored during cross-examination at trial.  Alaska Airlines has demonstrated, by a

5   preponderance of the evidence, that Beyer's anticipated testimony is sufficiently reliable

6   and relevant, and that it will assist the trier of fact in understanding the evidence.

7   Therefore, Endurance's motion to exclude the testimony of Beyer, docket no. 83, is

8   DENIED.[12]

9   **Conclusion**

10          For the foregoing reasons, the Court ORDERS:

11          (1)     Alaska Airlines' Motion for Partial Summary Judgment, docket no. 45, is

12   GRANTED.  The Court concludes that Endurance's breach of its duty to defend was

13   unreasonable and therefore constitutes bad faith as a matter of law.  Endurance has not

14   rebutted the related presumption of harm, and coverage by estoppel is an appropriate

15   remedy for Endurance's bad faith.  Endurance's bad faith also establishes its liability

16   under IFCA, but the Court makes no ruling concerning damages.  Further, the Court

17

18   _____

19   [12] In light of this ruling on Endurance's motion to exclude Beyer's testimony, Endurance's motion, docket no. 78, to strike the Declaration of David Beyer, docket no. 77, is STRICKEN as moot.  Endurance's

20   motion to strike Beyer's declaration presents the same arguments as its motion to exclude Beyer's testimony, specifically, that Beyer's expert disclosure does not comply with Rule 26(a)(2)(C) and his

21   testimony is unreliable.  Additionally, Endurance's motion, docket no. 96, to strike the Declaration of David Beyer, docket no. 91, is DENIED.  Contrary to Endurance's assertion, the declaration does not

22   present any new or different opinions.  See Alaska Airlines' Rule 30(b)(6) Dep. at 250:12–17, Ex. 1 to Weber Decl. (docket no. 100); Ex. A to Beyer Decl. (docket no. 92) (filed under seal).

23

concludes, as a matter of law, that Endurance committed an unfair or deceptive act or practice under the CPA.

(2)     Endurance's Cross-Motion for Partial Summary Judgment, docket no. 65, is DENIED.

(3)     Endurance's motion to exclude the testimony of David Beyer, docket no. 83, is DENIED.

(4)     Endurance's motion, docket no. 78, to strike the Declaration of David Beyer, docket no. 77, is STRICKEN as moot, and its motion, docket no. 96, to strike the Declaration of David Beyer, docket no. 91, is DENIED.

(5)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 28th day of July, 2022.

Thomas S. Zilly
United States District Judge